Dale Verne DeREMER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17590.

United States Court of Appeals
Eighth Circuit.

Jan. 26, 1965.

Clay R. Moore, Mackall, Crounse, Moore, Helmey & Holmes, Minneapolis, Minn., made argument for appellant and filed brief.

John J. Connelly, Asst. U. S. Atty., Minneapolis, Minn., made argument for appellee and filed brief with Miles W. Lord, U. S. Atty., Minneapolis, Minn.

Before MATTHES, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

After executing a waiver of trial by jury, appellant was tried, convicted and sentenced to two (2) years' imprisonment by the District Court for the District of Minnesota, for refusing to submit to in-

duction into the Armed Forces of the United States in violation of § 462, Title 50 App.U.S.C.A.; and he has duly perfected this appeal therefrom.

At his trial, appellant challenged on constitutional grounds the administrative process leading up to the order of his induction into the Armed Forces; contrary to his claim for a I–O (conscientious objector) classification. He makes the same contentions here. The memorandum opinion of the District Court adjudicating appellant's guilt may be found at 221 F.Supp. 553.

Appellant has had a long history with the Selective Service System of the United States. His original registration was on July 26, 1954, before Local Board No. 7, Blue Earth County, Mankato, Minnesota. Since that registration, to the present time, appellant has claimed right to a I–O classification that would exempt him from both combatant and non-combatant training and service under § 456(j), Title 50 App., U.S.C.A., based on his religious belief as a member of Jehovah's Witnesses. Contrary to that claimed exemption, appellant was first classified I–A by his Local Board in 1954. He took an appeal from that classification to the Appeal Board for the State of Minnesota. In the course of processing that appeal, appellant appeared before a Department of Justice hearing officer, Mr. Philip Stringer, on May 22, 1956, who, after receiving evidence of appellant's then claim to a I–O exemption, "recommended to the Department of Justice (his) appeal not be sustained." Thereafter, the Department of Justice, acting by and through the Chief of its Conscientious Objector Section, made a similar recommendation to the Appeal Board. On review of appellant's selective service file, the Minnesota Appeal Board classified appellant I–A. Notwithstanding that classification, appellant was not immediately inducted into the Armed Service, because, on pre-induction physical examination, he was found to be unacceptable. As a consequence, he was reclassified IV–F. Following the termination of his physical disability and on

re-examination, appellant's Local Board reclassified him I–A on April 21, 1959. However, due to his then employment in a defense plant, Northern Ordnance, Inc., he was given a temporary classification of II–A, until August 1960. Appellant did not appeal from that classification. Throughout the period of time here considered, appellant has been continuously employed by Northern Ordnance, Inc., which factory was devoted exclusively to defense production. The last-above-mentioned classification was made at the request of appellant's employer.

On August 16, 1960, appellant's Local Board again classified him I–A. Appellant, after unsuccessfully contesting that classification, again appealed to the Appeal Board, supra. Such appeal was again referred to the Department of Justice for investigation to be administratively processed as set forth at 32 C.F.R., § 1626.25. The F.B.I. conducted another investigation and made a report, and appellant again appeared before Mr. Stringer, the same hearing officer before whom he had appeared in 1955. After holding the second hearing, Mr. Stringer filed a report with the Department of Justice on April 13, 1961, dubiously recommending that appellant "be classified as a conscientious objector, opposed both to combatant and noncombatant training and service." Notwithstanding, the Department of Justice, by letter dated May 2, 1961, to the Appeal Board, recommended that defendant be classified I–A–O, i. e., opposed only to combatant service. The letter so recommending contained, among other things, a summary of the last-mentioned hearing officer's report and recommendation; and enclosed a copy of the report as made by the F.B.I. After receipt thereof, a copy of all such communications were sent by the Appeal Board to defendant on May 16, 1961, together with notice that he had thirty (30) days to file a written reply concerning such recommendation. Appellant acknowledged receipt of that communication by letter to the Appeal Board dated June 12, 1961, in which he again reas-

serted his religious convictions and stated:

"I have been appealing for IV–D, I–O, and my place of employment has been appealing for a II–A classification in my behalf.

"Reason has been given wherein the Appeal Board does not think I qualify for a IV–D and I–O. If this is the case, why hasn't consideration been given to the II–A classification?

"I would like to have you consider this classification."

Thereafter, on June 24, 1961, the Appeal Board classified appellant I–A–O (opposed to military combat service only). Appellant was ordered by his Local Board to report for induction on December 13, 1961. This he did but refused to step forward and be inducted into the Armed Forces of the United States when so ordered by competent authority. Thus his prosecution, conviction, and the sentence from which he here appeals.

■ To secure a reversal of his conviction and sentence the primary argument appellant presents is: The order for his induction into the Armed Forces of the United States is basically unconstitutional and invalid since he was not furnished with a facsimile "copy of the hearing officer's report" nor was such a copy placed "in defendant's selective service file" for review by the Appeal Board when it came to consider his appeal. As a consequence, appellant claims, he was "denied due process and a fair hearing," leading to the order of his induction into the Armed Forces, and his conviction here cannot stand. That identical contention was made by appellant before his trial court and adversely ruled by District Judge Devitt, at page 555 of 221 F.Supp. In the light of controlling authority, Judge Devitt could find no merit in appellant's contention, *ante*. Neither can we.

The general procedure to be followed by a person claiming conscientious objector classification was reviewed and generally approved from a consideration of constitutional standards of due process,

in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417. There it is pointed up that under the appellate procedure provided by 32 C.F.R., § 1626.25, nothing is reviewed by the Appeal Board which has the ultimate responsibility for determining the classification of an inductee, which is not also in the possession of, or made available to, the inductee. Notwithstanding, appellant asserts the constitutional guarantee of a fair hearing requires more, and that all the evidence examined by the F.B.I. and that heard by the hearing examiner, must be before the Appeal Board and made available to the inductee, including a verbatim copy of the hearing officer's report and recommendation, if he is to have a fair hearing; citing in support thereof, Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467; Mazza v. Cavicchia, 15 N.J. 498, 105 A.2d 545 (1954).

■ Since the inception of the Selective Service system the various classification procedures have, time and again, been considered by the courts, including the procedures surrounding conscientious objector claims, and certain guidelines for judicial review have merged from these cases. The scope of review is "the narrowest known to the law." Blalock v. United States, 247 F.2d 615, 619 (4 Cir. 1957). Courts will interfere with a classification only if there is a lack of basic procedural fairness, or if there is no basis in fact for the classification. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Swaczyk v. United States, 156 F.2d 17 (1 Cir. 1946). A claimant for an exemption is entitled to a fair hearing before an impartial officer, i. e., he is entitled to adduce evidence in his own behalf, and to receive a fair résumé of any adverse evidence adduced. These are necessary for basic procedural fairness; but this requirement of a fair hearing does not mean that he is entitled to a full-scale "trial" by the Department of Justice. United States v. Nugent, supra. The

claimant is entitled to a fair résumé of the F.B.I. inquiry, Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955), although not entitled to the investigative report of the inquiry itself, United States v. Nugent, supra; Campbell v. United States, 221 F.2d 454 (4 Cir. 1955). He is entitled to a copy of the Department of Justice recommendation to the Appeal Board so that he will have a fair opportunity to rebut it before the Board. Gonzales v. United States, supra.

It is noted that in the above general considerations there is no mention of the hearing officer's report as here questioned. Such a report was considered *inter alia* in Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960). In that case the Supreme Court stated:

" * * * the hearing officer's report is but intradepartmental, is directed to the Attorney General and, of course, is not the recommendation of the Department. * * * It is but part of the whole process within the Department that goes into the making of the final recommendation to the appeal board." 364 U.S. 59, 63, 80 S.Ct. 1554, 1557.

Having thus characterized such report and noting that it was not provided to the Appeal Board, the Court held that the production thereof was not necessary for a fair hearing in that instance. Appellant would distinguish that case on the basis that the dispute in Gonzales lay in a finding of the Local Board, adopted by the Appeal Board, which the claimant could have attacked without calling on the information in the hearing officer's report which the Court indicated was irrelevant to the point in issue. A fair reading of Gonzales supports such contention as it is apparent that the Court there did not reach the larger question as to whether, in a proper case, a fair hearing might not require that this report be available to the claimant, merely holding that in the case then before it the report was not relevant.

Even though the decision in Gonzales does not solve the specific problem here, the language there used to describe a hearing report is most significant, for it appears that the Court treated such reports the same as it did an F.B.I. investigative report which, as pointed out above, is not required to be furnished to the claimant. As indicated by the Court, such reports are "intradepartmental," that is, they may be likened to a memorandum from a subordinate to his superior, which are only a part of a decision-making process, not the decision itself.

That being so, the question here merely relates to a recommendation which the Department of Justice makes to the Appeal Board that is not a final decision and in no way affects the status of a claimant *per se*. The Department of Justice in these cases does not occupy a position of advocacy to maintain or defeat the claim of a registrant; it merely investigates and reports. Bouziden v. United States, 251 F.2d 728 (10 Cir. 1958). As mentioned above, the hearing officer's report is merely one step of that investigatory scheme, the whole of which results in a report to the Department of Justice being made to the Appeal Board.

■■ As a matter of general administrative law, it is well settled, at least since the first and fourth "Morgan" cases (Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)), that administrative agencies may properly use subordinates in information-gathering and analysis. From such decisions it is further evident that there is no impropriety in administrative procedure if subordinates prepare résumés of their compilations and analyses of information, which do not become part of the "record proper" and that this does not detract from a fair hearing. Pierce v. S. E. C., 239 F.2d 160 (9 Cir. 1956); Norris & Hirshberg v. S. E. C., 82 U.S.App.D.C. 32, 163 F.2d 689 (1947); N. L. R. B. v. Baldwin Locomotive Works, 128 F.2d 39 (3 Cir. 1942). Cf. 2 Davis, Administrative Law, Chap. 11. It is clear that such is exactly what we are dealing with in the case at bar—a hearing officer's report which

merely serves the function of gathering together information and to a certain extent analyzing it, and is used as an aid by the Department of Justice in making a report to the Appeal Board, which is by no means binding.

Appellant relies on a decision of the Supreme Court of New Jersey in Mazza v. Cavicchia, supra, for a ruling *contra*, in which that Court held that the withholding from the appellant there of a secret report by a "hearer" similar to the hearing officer here, deprived that appellant of due process and a fair hearing. The Mazza case, supra, on its facts is immediately distinguishable from the facts appearing in the case at bar, in that the appellant there had no knowledge at all of the contents of the hearer's report, while here the appellant was provided with a summary thereof. Even if that it not considered to be sufficient distinction, then we think the conclusion in the Mazza case is not convincing. See 2 Davis, Administrative Law, § 11.09 for an exhaustive analysis of the Mazza case. In addition, it should be noted that the Supreme Court has recently (Herrin Transportation Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961)) affirmed *per curiam* a three-judge District Court holding which specifically ruled that consideration of intermediate intra-departmental information and recommendations need not be made available to the parties in order to insure a fair hearing. T. S. C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (D.C.S.D.Tex., 1960). This seems to be *contra* to the broad conclusions appellant gives to the Mazza case, supra.

A strong argument to be made against appellant's contention here is the fact that he knew exactly what evidence might be used to defeat his claim, by virtue of his possession of the recommendation of the Department of Justice which contained a résumé of the hearing officer's report, as well as the report of F.B.I. inquiry. It must be kept in mind that the Appeal Board did not have the hearing officer's report before it. The decision of the Appeal Board was based only on information which was made available to appellant, and none other. Thus appellant had every opportunity to rebut the *only* evidence which was used against him in the case at bar, denying his claimed exemption. The lack of opportunity to do this was the primary reason leading to the Mazza decision. That reason does not exist here. Considering controlling authority, supra, and all of the factors here present, we do not think it can be said that the production of the hearing officer's report here in question was necessary to guarantee appellant a fair hearing.

Appellant further contends that his due process rights were further violated because the report of the Department of Justice contained prejudicial misstatements of the findings of the hearing officer in its summary (a further argument made for the production of the actual report); that the recommendation of the Department of Justice is based on an erroneous conclusion of law; and, finally, that he has been deprived of fair and impartial treatment due to bias and prejudice on the part of his Local Board.

There is no doubt that once the Department of Justice undertakes to summarize the contents of a hearing officer's report into the record for consideration by the Appeal Board in cases such as this, it has an obligation to render a fair summary, and that appellant is entitled to receive a copy of all the evidence adduced against his claim. United States v. Nugent, supra; United States v. Gonzales, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467; and Simmons v. United States, supra. Appellant alleges that in this instance the summary in the Department's report was, in fact, unfair and contained misstatements from the hearing officer's report. The two examples cited by appellant are: (1) comments as to the extent of his Biblical knowledge; and (2) concerning his work in a defense plant. In addition, he complains that the Department report contained only reference to the hearing officer's negative findings, not including any reference to his findings favorable to appellant. In Sim-

mons v. United States, supra, 348 U.S. at page 405, 75 S.Ct. at page 401, the Supreme Court stated: "A fair résumé is one which will permit the registrant to defend against the adverse evidence—to explain it, rebut it, or otherwise detract from its damaging force."

■ Here it appears that appellant was given ample opportunity to bring out all alleged favorable evidence to mitigate the unfavorable findings of the Department of Justice of which he complaints. It is apparent that in its résumé the Department was endeavoring in good faith to point out exactly what items influenced its opinion and thus to give appellant a fair chance to attack these conclusions. A comparison of the two documents as a whole (since the trial court ordered the production of the hearing officer's report, they are both part of the record before this Court)[1] certainly shows no unfairness in the rendering made of that document by the Department of Justice. It is noted that the Department contented itself with a factual rendition and did not include any references to the hearing officer's considerable "doubts" about appellant's claim to a I–O classification.

■ Appellant next asserts that the recommendation of the Department of Justice was based on an erroneous conclusion of law, i. e. that appellant's employment in a defense plant is sufficient to defeat his claim for an exemption based on conscientious objection to war. If the Appeal Board had classified appellant I–A, i. e. denied him any exemption at all, it might be that he could claim an inadequate basis in fact for a lesser classification in light of the reasoning in Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) where it was ruled that a limited willingness to fight, (e. g. in a theocratic war under God's directions) was not sufficient grounds to warrant a denial of all exemp-

tion. In the instant case we have no denial of an exemption *in toto*, but rather a limited exemption (from combatant service only) which the Appeal Board apparently felt was all that was here justified. The Appeal Board can only be considered as having made that decision from a consideration of all of the facts before it, and this clearly includes the means by which appellant was then earning his living. Each claim for an exemption must rest on its own merits, and the Appeal Board must make its decision each time on an individual basis. Swaczyk v. United States, supra; Keefer v. United States, 313 F.2d 773 (9 Cir. 1963). The cases are legion holding that the Board may properly consider the claimant's willingness to actively work in defense production in its determination as to the sincerity of a claim for an exemption from non-combatant service, and that such employment is sufficient to provide a factual basis for an exemption from combatant service only. Blalock v. United States, supra; United States v. Moore, 217 F.2d 428; Keefer v. United States, supra; Meredith v. United States, 247 F.2d 622 (4 Cir. 1957); White v. United States, 215 F.2d 782 (9 Cir. 1954). We are not here dealing with indirect participation such as held in United States v. Wilson, 215 F.2d 443 (7 Cir. 1954), to be insufficient to prevent the claimant from establishing his right to an exemption. Here we are dealing with an employment in a factory engaged almost solely in defense work for the Navy, of which fact appellant was aware. From his letter to the Appeal Board dated June 12, 1961, ante, that Board could reasonably have considered his request for a II–A classification in connection with his conscientious objector claim. Obviously, that was a material issue to be considered by the Board in arriving at its decision as to the sincerity of appellant's claim.

1. By comparison reference to such document it should not be deemed that we here sanction the power of a District Court to order the production thereof.

A ruling on that question is not present in this appeal. See Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569.

Appellant also complains of alleged bias and prejudice on the part of his Local Board. This claim is premised on two statements found in his file, made by the Local Board, which give that Board's opinion that persons of appellant's views should not work in sensitive defense plants where obstructionist tactics at times of particular peril might prove damaging to the defense effort. It is noted that such were merely the views of the Local Board, expressed in general terms and in no sense are they specific accusations of subversive activities leveled against appellant as he seems to assume.

Regardless, the question of possible prejudice on the part of the Local Board is not available to appellant to attack his I–A–O classification. That classification was made by the Appeal Board, not appellant's Local Board. It is universally held that the Appeal Board considers matters of classification *de novo* and its classification is one of first instance, not a mere affirmance or reversal of the Local Board, and that any such prejudice on the local level is cured by a fair consideration on the appeal. Davis v. United States, 203 F.2d 853 (8 Cir. 1953); United States v. Chodorski, 240 F.2d 590 (7 Cir. 1956); Tyrrell v. United States, 200 F.2d 8 (9 Cir. 1952); Reed v. United States, 205 F.2d 216 (9 Cir. 1953); Cramer v. France, 148 F.2d 801 (9 Cir. 1945). As there is no allegation of prejudice here made on the part of the Appeal Board it is evident that any detrimental attitude on the part of the Local Board, if such there was, is insufficient reason to attack appellant's classification.

For the reasons stated above, we do not find any basis in fact to support the contentions appellant here makes, and since no merit is found in appellant's assignments of error the judgment appealed from is

Affirmed.