**William Creighton VAUGHN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19125.**

United States Court of Appeals
Eighth Circuit.

Dec. 4, 1968.

Rehearing Denied Dec. 30, 1968.

N. 399 US 526

Bright, Circuit Judge, dissented.

Robert C. Oberbillig, Waterloo, Iowa, for appellant.

Thomas F. Dowd, Asst. U. S. Atty., Omaha, Neb., for appellee; Theodore L. Richling, U. S. Atty., on the brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

The appellant was found guilty by a jury of wilfully and knowingly failing and neglecting to comply with an order of his local draft board (Omaha, Nebraska) to report for and submit to induction into the Armed Forces of the United States, in violation of 50 U.S.C. App. § 462. He has appealed from the judgment of conviction.

The basic question for decision is whether appellant's local draft board in Omaha, Nebraska, was justified in failing to reopen his I–A classification and considering his claim that he was a conscientious objector. Appellant submits that the failure to reopen has no "basis in fact" and deprived him of basic procedural fairness. This issue must be determined from the information and evidence furnished by appellant in the administrative proceeding. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947).

The record presents a unique factual situation. We review the pertinent events in chronological order.

November 20, 1963. Questionnaire was mailed to appellant. He did not sign

"Series VIII—CONSCIENTIOUS OBJECTOR" which reads:

"By reason of religious training and belief I am conscientiously opposed to participation in war in any form and hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150)."

December 12, 1963. He was classified II–S (student deferment) until June 1, 1964.

December 18, 1964. Classified I–A and duly notified of such classification.

January 18, 1965.[1] He was mailed an order to report for physical examination on February 15, 1965.

February 11. Local board received a letter from appellant stating for the first time that he was a conscientious objector. Because this letter is vital to the question of whether the local board acted arbitrarily in failing to reopen appellant's classification and grant him a personal appearance we reproduce the letter in full.

"William C. Vaughn
5327 So. Cornell Ave.
Apt. 217
Chicago, Ill.
9 Feb. 1964 [sic]

Douglas Co. Local Board No. 28
Selective Service System
2409 Federal Building
215 No. 17.th St.
Omaha, Nebr.

Dear Sirs:

This is to inform you I cannot afford to make the trip from my home here to Omaha. Therefore I will be unable to be at my physical examination as scheduled. The hour of reporting was to have been at 7:00 a. m., 15 Feb., 1965.

Furthermore, I request a change in classification from my present I–A to that of a conscientious objector. For me, participation in the armed services is unethical. Here are a few of my reasons.

---

1. Unless otherwise indicated all subsequent events occurred in 1965.

First, I believe war is outmoded. As circumstances exist today, war means complete annihilation. There is no possibility of either party gaining in an armed conflict today. Yet, almost everyone seems to feel war is a distinct possibility today, i. e., they still think of solutions to conflicts in terms of war. War is no longer a possibility, for if there is a war we will all be dead. The public must be educated to this fact and this is a duty far above the supposed duty to serve in the armed services.

Second, killing, I believe, is immoral whenever that is our intention. Therefore to serve as part of a war effort is against my personal ethics, as is capital punishment. As far as self-defense and a defense of nation is concerned, passive resistance is much more effective as well as being better morally.

My third reason has been alluded to in the previous sentence. That from the point of view of expediency passive resistance is much more effective. This is the method used with such great success by men such as Ghandi in the past and Martin Luther King and Mario Savio today. Moral force is much stronger than physical force.

Gentlemen, I am as interested as anyone in preserving freedom and human rights and in defending our country. But I favor a different type of defense. One of the freedoms I am interested in preserving is the freedom of conscience. Therefore I ask you to allow me my freedom to follow my ethical principles. Incidentally, my principles seem to be the same as Christian principles, for Christ himself said "He who takes up the sword shall perish by the sword," and "turn thou the other cheek." When will these principles become meaningful to all?

If you intend to preserve the matter further, I request a change from the jurisdiction of the Omaha board to one in Chicago where I live. Since I work, I cannot afford to go to Omaha to iron this out and lose job time and money spent on transportation. Thank you.

Sincerely yours
/s/ William C. Vaughn"

February 12. The local board informed appellant that he could undergo his physical examination in Chicago on March 26. He was further informed that he was required to complete enclosed SSS Form 150 and return it to the board. On the top of Form 150 was this instruction:

"This form must be returned on or before February 23, 1965, ten days after mailing or issue."

It was also stated on the face of the form:

"Failure by the registrant to file this special form on or before the date indicated above may be regarded as a waiver by the registrant of his claim as a conscientious objector; Provided, that the local board in its discretion, and for good cause shown by the registrant, may grant a reasonable extension of time for filing this special form."

March 26. Appellant was physically examined and found acceptable.

April 6. The local board mailed finding of his physical fitness to appellant.

April 7. Board mailed order to report for induction on May 24.

May 24. Appellant informed the board by telephone that he had not reported for induction as instructed; that he had not returned SSS Form 150 because he could not answer the first two questions pertaining to his belief in a Supreme Being. He stated that under existing law *he was not a conscientious objector*. The clerk of the board requested him to come to the local office the next day.

May 25. Appellant appeared at the local board's office, filed Form 150, but failed to answer questions (A) and (B)

Series I.[2] Under Series II—RELIGIOUS TRAINING AND BELIEF, the following questions appeared:

1. "Do you believe in a Supreme Being?" Applicant answered this, "no, see accompanying sheet."

2. "Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation." Appellant's response to this question was "see accompanying sheet."[3]

June 2. The local board submitted appellant's file to the Nebraska State Board Headquarters for determination.

June 8. At the suggestion of the local board appellant appealed to the Nebraska Appeal Board.

October 30. In accordance with prescribed procedures a hearing was conducted by a representative of the Department of Justice. Appellant was present and participated in this hearing.

December 27. Department of Justice recommended against reclassification.

February 25, 1966. The appeal board unanimously voted to sustain the I–A classification.

March 18. Appellant was ordered to report for induction on April 11. He failed to comply with this order. This prosecution ensued.

We approach the question here, mindful of the admonition of the Supreme Court "that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 1953, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132." Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 398, 99 L.Ed. 428 (1955).

Our scope of review is a narrow one. *Witmer*, supra at 380, 75 S.Ct. 392. We are permitted to overturn the classification "only if it has 'no basis in fact,' Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567." *Witmer*, supra at 381, 75 S.Ct. at 395; Lockhart v. United States, (9th Cir., October 23, 1968); United States v. Spiro, 384 F.2d 159, 161 (3rd Cir. 1967),

2. Question (A) reads:
"I am, by reason of my religious belief, conscientiously opposed to participation in war in any form. I, therefore, claim exemption from combatant training and service in the Armed Forces."
Question (B) reads:
"I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training in the Armed Forces."

3. In the sheet accompanying SSS Form 150 appellant, referring to questions under Series I, stated:
"I am unable to answer this question as it stands. Neither of the choices available describes my position. I am conscientiously opposed to participation in either combatant or noncombatant

training in service in the Armed Forces and I do claim exemption from both combatant and noncombatant training in service in the Armed Forces. However, the basis for my objections and my claim for exemption has nothing to do with any 'religious training or belief.' "
Appellant's remarks in regard to questions 1 and 2 under Series II are as follows:
"1. Whether I believe in a supreme being is irrelevant since my ethical and moral positions would remain the same whether I believe in a supreme being or not. To answer the question, however, I have no formulated belief in any kind of a supreme being.
2. In general, I hold that the question of the existence of a supreme being is irrelevant for all of my moral and ethical positions. My morality is based on reason alone, and a belief in a Supreme Being would involve no duties superior to those arising from any human relation, even if I were to hold such a belief."

cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1968); United States v. Sturgis, 342 F.2d 328, 331 (3rd Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); Keefer v. United States, 313 F.2d 773 (9th Cir. 1963), or if we find that the local board's action had the effect of denying appellant basic procedural fairness.[4]

The regulations provide a comprehensive plan for classification and reopening and consideration anew of the classification.

Under 32 C.F.R. § 1624.1, every registrant after his classification has been determined by the local board shall have an opportunity to appear in person before the board "if he files a written request therefor within 30 days after the local board has mailed a Notice of Classification to him. Such 30 day period may not be extended." Concededly, appellant at no time complied with this regulation.

Sections 1625.2 through 1625.14 relate to reopening of the registrant's classification. Section 1625.2 provides the local board may reopen and consider anew the classification upon the written request of the registrant, if such request is accompanied by written information presenting facts, which if true, would justify a change in the classification. According to § 1625.11, when the local board reopens, it should consider the new information and shall again classify the registrant as if he had never been classified before. Section 1625.13 provides "each such classification shall be followed by the same right of appearance before the local board and the same right of appeal as in the case of an original classification."

The parties agree that the local board did not reopen appellant's I–A classification. Neither was he given the opportunity to appear before that board. Thus, the question for decision is focused upon the local board's action following receipt of appellant's February 9th letter, above set forth. More precisely, did the information there submitted present facts which, if true, required the local board to reopen and consider anew the classification?

■ The courts have held that the language of § 1625.2 is not unqualifiedly permissive and that the local board cannot act with complete discretion and arbitrariness. If the evidence submitted is sufficient to establish a prima facie case of the registrant's claim, then the board must reopen and determine whether registrant is entitled to the requested classification. Stain v. United States, 235 F.2d 339 (9th Cir. 1956); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Vincelli, 215 F.2d 210 (2nd Cir. 1954). However, a registrant is not entitled to have his classification reopened and reconsidered upon a mere naked request. He is required to submit written evidence of objective facts in support of his claim of exemption. United States v. Mohammed, 288 F.2d 236 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed. 2d 26 (1961); United States v. Ransom, supra.

■ Although the Government forceably argues that appellant's I–A classification has a "basis in fact," it also contends that appellant, having refused to report for induction as ordered, failed to exhaust his administrative remedies and is not entitled to judicial review of his classification. It is said that appellant

4. It has been held that a registrant claiming denial of a procedural right has the burden of proving he was prejudiced. United States v. Spiro, supra; United States v. Jones, 384 F.2d 781 (7th Cir. 1967); United States v. Sturgis, supra 342 F.2d at 331; Bradshaw v. United States, 242 F.2d 180 (10th Cir. 1957); Rowton v. United States, 229 F.2d 421 (6th Cir.), cert. denied, 351 U.S. 930, 76 S.Ct. 788, 100 L.Ed. 1460 (1956). But see United States v. Freeman, 388 F.2d 246, 250 (7th Cir. 1967); Steele v. United States, 240 F.2d 142 (1st Cir. 1956). Since we find no denial of a basic procedural fairness we refrain from further discussion of the burden of proof issue.

did not bring himself to the "brink of induction" and is therefore without standing to assert the invalidity of his classification. The contention is not without merit. See Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305 (1944); Daniels v. United States, 372 F.2d 407 (9th Cir. 1967); Moore v. United States, 302 F.2d 929 (9th Cir. 1962); Van Bibber v. United States, 151 F.2d 444 (8th Cir. 1945).

"The failure to exhaust administrative appellate remedies is not always a bar to asserting as a defense to criminal prosecution, for refusal to submit to induction, that there was no basis in fact for the denial of a claimed conscientious objector classification.

\* \* \* \* \* \*

"Generally speaking, the rule requiring the exhaustion of administrative remedies is a rule of convenience fashioned by the courts to permit administrative agencies to correct their own errors. Also, by requiring a party aggrieved by an administrative decision to pursue all available administrative avenues open to him before seeking judicial relief, the courts are assured that many cases that would otherwise be litigated never actually reach the courts.

"There is nothing in the Selective Service laws or regulations that precludes a defendant indicted for a criminal violation of the Selective Service law from attacking the jurisdiction of the Draft Board unless he has first exhausted all administrative remedies. The rule of exhaustion is a court-made rule." *Lockhart,* supra.

We regard this as an appropriate case for relaxing the rule.

 The Government also asserts that appellant waived his claim for conscientious objector status. It argues that 32 C.F.R. § 1621.11 mandates that a registrant who claims to be a conscientious objector must substantiate his claim on SSS Form 150. Another reg-

ulation, 32 C.F.R. § 1625.2, noted above, provides, however, that the local board may reopen and consider anew the classification of a registrant "upon the written request of the registrant \* \* \* if such request is accompanied by written information presenting facts not considered when the registrant was classified \* \* \*." Certainly the regulations were promulgated for a salutary purpose. Undoubtedly compliance with § 1621.11 is conducive to efficient processing of a claim for exemption. We believe, however, that classification in accordance with the law should not rest upon technical considerations. Substance, not form, is the controlling factor. We therefore hold that appellant's letter of February 9th was sufficient *in form* to satisfy the requirements of the regulations.

 We revert then to consideration of the substance of the letter. Did the information submitted present facts which deprived the local board of the discretionary authority vested in it by 32 C.F.R. § 1625.2? Stated differently, did the letter make a prima facie showing for conscientious objector classification? If so, the local board should have reopened his classification unless it had a basis in fact for failing to do so. United States v. Ransom, supra.

Under 50 U.S.C. App. § 456(j), prior to the 1967 amendment, one who claimed to be a conscientious objector was required to show:

"by reason of religious training and belief [he] is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code." [5]

In May, 1965, the Supreme Court in United States v. Seeger, 380 U.S. 163,

---

5. This section was amended by the Military Selective Service Act of 1967 by omitting the "Supreme Being" clause.

85 S.Ct. 850, 13 L.Ed.2d 733, defined "Supreme Being" as a given belief that is sincere and meaningful, which belief "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption." Id. at 166, 85 S.Ct. at 854.

"We have concluded that Congress, in using the expression 'Supreme Being' rather than the designation 'God,' was merely clarifying the meaning of religious training and belief so as to embrace all religions and *to exclude essentially political, sociological or philosophical views.*" (Emphasis added.) Id. at 165, 85 S.Ct. at 854.

The Court further explained in *Seeger*:

"We noted earlier, *the statutory definition excepts those registrants whose beliefs are based on a 'merely personal moral code.'* The records in these cases, however, show that *at no time did any one of the applicants suggest that his objection was based on a 'merely personal moral code.'* Indeed at the outset each of them claimed in his application that his objection was based on a religious belief." (Emphasis added.) Id. at 185–186, 85 S.Ct. at 864.

The only shred of evidence linking appellant's claim as a conscientious objector to a religious belief is found in the sixth paragraph of the letter wherein he made reference to Christian principles and purported to quote from the Bible. We have with deliberation studied this statement separate and apart from the letter as a whole, but are unable to derive any meaningful significance therefrom. It will be observed that appellant did not vow allegiance to "Christian principles." The extent of his profession of faith was "[i]ncidentally my principles *seem to be* the same as Christian principles, * * *." (Emphasis added.) The biblical quotations, set forth abstractly as they are, bear little, if any, relevance to the asserted claim.

Evaluation of the full text of the letter leaves us with the firm conviction that there was a basis in fact for the board's action. The communication convincingly demonstrates that appellant's claim was premised solely on a moral and philosophical code. He declared in unequivocal language: (1) Participation in the Armed Forces is unethical; (2) War is outmoded; (3) Killing is immoral; (4) Passive resistance is much more effective; (5) Moral force is much stronger than physical force.

We do not believe the reasons enunciated by appellant, considered severally or together, fall within the ambit of the Supreme Court's teachings in *Seeger*. We cannot escape the conclusion that the letter in context was insufficient to make a preliminary showing that appellant was a conscientious objector. It simply failed to furnish sufficient information to enable the board to determine the source of appellant's views.

As the *Seeger* Court observed:

"The section [50 U.S.C. App. 456(j)] excludes those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it." 380 U.S. at 173, 85 S.Ct. at 858.

In short, appellant's request on its face failed to meet the statutory standard and reopening was not required. See Welsh v. United States, 404 F.2d 1078 (9th Cir., September 23, 1968).

■ We are mindful that the crucial issue, i.e., whether the local board should be faulted for not reopening, must be resolved mainly in light of the evidence submitted to the board in the February 9th letter. The subsequent events, however, are entitled to consideration. This is so because an appeal involves a hearing de novo, Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965); Davis v. United States, 203 F.2d 853 (8th Cir. 1953),

and supplementary material may be submitted to the appeal board as was the case here. Tyrrell v. United States, 200 F.2d 8 (9th Cir. 1952), cert. denied, 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346 (1953). In our view the post-February 9th events and the exhaustive investigation conducted in connection with the review by the appeal board serve to reinforce our conclusion that the local board did not act arbitrarily.

As required by Section 6(j) of the Universal Military Training and Selective Service Act of 1951 (50 U.S.C. App. § 456(j), as amended), an inquiry was made by the Department of Justice.[6] During the course of this inquiry appellant was given an opportunity to be heard. He appeared before the hearing officer on October 30, 1965, accompanied by his father. He stated at length the principles upon which he based his claim for exemption as a conscientious objector.[7] The Department of Justice concluded that appellant had failed to sustain his burden of proving his conscientious objector claim and recommended to the board that the claim be denied.

Thus, in capsule form, we have a case involving an intelligent and knowledgeable young man who from the inception of the controversy manifested a full understanding of the requirements for qualification as a conscientious objector. He failed at every stage of the proceedings to furnish evidence sufficient to require the local board to reopen or the appeal board to order him reclassified.

He was content to rely upon moral and philosophical considerations to support his claim. We are convinced appellant has not been denied basic procedural fairness and that there was ample basis in fact for the local board's I–A classification and its failure to reopen.[8]

Appellant also argues that his conviction should be reversed because: (1) The Government failed to prove criminal intent; (2) The trial court erred when it denied appellant's motion for discovery of information from the files and records of the Department of Justice and the Selective Service System; (3) The trial court should have acquitted appellant because the Selective Service Act is unconstitutional. We have considered these contentions and find them lacking in merit.

We affirm.

BRIGHT, Circuit Judge (dissenting).

I respectfully dissent from the majority opinion and would reverse appellant Vaughn's conviction for the reasons stated below.

We are here concerned, not with whether there was a basis-in-fact for Vaughn's original December, 1964, I–A classification nor with whether the rejection of his conscientious objector claim by the Selective Service Appeal Board is supportable on a factual basis, but solely with whether the conviction can stand without showing on the record that Vaughn's local Selective Service

---

6. The Military Selective Service Act of 1967 amended section 6(j) by eliminating the requirement for a referral of conscientious objector cases to the Department of Justice for hearing and advisory recommendation.

7. Appellant testified before the hearing officer "that he is an agnostic and does not know whether or not there is a Supreme Being, but that the point is of no significance as the mere fact that one is a human being dictates the command not to take human life; that he feels that every human holds an obligation to every other human being to refrain from taking human life." He stated he "could not point to any particular in-

dividual or group of individuals or documents or books which had caused him to come to these conclusions and that his reasons are the result of his own thinking on current events; * * *."

8. Compare Willner v. Committee on Character, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), involving the question of whether an applicant who was denied admission to the New York State Bar was accorded due process by the admission procedures. The Supreme Court held that due process is satisfied when such an applicant is given a hearing *either* at the local committee stage *or* at the appellate level.

board ever considered his claim for a conscientious objector status.

The record, including Vaughn's Selective Service file, discloses that the members of the local board did not consider appellant's request for a change in classification. True, draft board clerks saw Vaughn's letter of February, 1964, and his late-filed SSS form 150, but the board neither saw nor acted on these documents.

I agree with the majority that we draw our focus on the February letter. If this letter makes a sufficient preliminary showing, taking all there written as true, that Vaughn could qualify as a conscientious objector pursuant to 50 U.S.C. App. § 456(j), as then applicable, he would thus be entitled to a reopening of his I–A classification, including a right of personal hearing before the local board.[1]

However, to the contrary, if Vaughn had not made a sufficient preliminary showing, a prima facie case for conscientious objector status, the failure of the board to reopen his classification deprived Vaughn of no substantial right and his conviction should stand.

I focus on this narrow issue with emphasis on the sixth paragraph of Vaughn's letter reading:

"Gentlemen, I am as interested as anyone in preserving freedom and human rights and in defending our country. But I favor a different type of defense. One of the freedoms I am interested in preserving is the freedom of conscience. Therefore I ask you to allow me my freedom to follow my ethical principles. Incidentally, my principles seem to be the same as Christian principles, for Christ himself said, 'He who takes up the sword shall perish by the sword,' and 'turn thou the other cheek.' When will these principles become meaningful to all?"

The then applicable section of the law relating to conscientious objectors is 50 U.S.C. App. § 456(j) (prior to 1967 amendment), which states in part:

"Nothing contained in this title * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

The precise question may be presented thusly: Does Vaughn's February letter demonstrate, pursuant to the essentials of the statute, that he was (1) conscientiously opposed to war in any form, and (2) this objection arises by reason of his religious training and belief in relation to a Supreme Being involving duties superior to those arising from any human relation?

In United States v. Seeger, 380 U.S. 163, 166, 85 S.Ct. 850, 854, 13 L.Ed.2d 733 (1965), the test of belief in relation to a Supreme Being

"is whether a given belief that is sincere and meaningful occupies a place in the life of the possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption."

Based on these statutory principles and accepting for present purposes the sincerity of Vaughn's statements in the letter, I feel that Vaughn states a commitment of conscience opposed to war in any form. Further, the letter evidences, at least in part, a moral commitment superior to those arising from any human relationship.[2] His belief, which

---

1. 32 C.F.R. 1625.13.

2. The trial record in fact disclosed that Vaughn had had extensive religious and parochial school training through grade, high school and college levels. It is clear, however, under *Seeger*, that adherence

he equates with Christian principles and Christ's message, parallels the orthodox belief in God of one who could qualify for the exemption.

In my judgment, the portions of Vaughn's letter stating personal political and philosophical views are not inconsistent with nor do they detract from those religious-ethical principles asserted in the text of the letter. Thus, in my opinion, his letter makes a prima facie case requiring the local Selective Service board to reopen Vaughn's classification. Vaughn ought to have been given the benefit of any doubt and allowed to present his case on the merits to the board. See, for example, United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968), in which a deep moral conviction against taking life of another entitled the registrant to reopening of his classification and Welsh v. United States, 404 F.2d 1078 (9th Cir., No. 21,442, September 23, 1968), in which a local board considered beliefs similar to Vaughn's on the merits and classified the registrant as a conscientious objector available for non-combatant duty, but the appeal board refused to concur.

The consideration of Vaughn's claim on Selective Service appeal, a de novo hearing, does not cure the failure to reopen his classification and thus to grant him a hearing and a right of personal appearance on the local board level. A registrant who fails to have a fair chance of obtaining proper classification by way of an appearance before the local board has been denied a fundamental right which cannot be cured on appeal. Knox v. United States, 200 F.2d 398 (9th Cir. 1952); Franks v. United States, 216 F. 2d 266 (9th Cir. 1954); cf. Briggs v. United States, 397 F.2d 370 (9th Cir. 1968).

The doctrine of Clay v. United States, 397 F.2d 901 (5th Cir. 1968), DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965) and similar cases holding that the de novo consideration on a Selective Service appeal cures irregularities on a local board level has no application to the instant situation where the issue was not heard at all by the local board.

My view that Vaughn was entitled to a consideration of his claimed conscientious objector status on the merits before the local board is fortified by events transpiring subsequent to the writing of the letter. Following his first refusal to report for induction on May 24, 1965, Vaughn's Selective Service file, including his February letter and conscientious objector form SSS 150, was forwarded by a clerk of the local board to the Nebraska State Selective Service headquarters for a review and determination. The Nebraska Selective Service deputy director suggested to the local board that Vaughn be permitted to appeal his classification. Notwithstanding Vaughn's "conclusion of law" that he was not a conscientious objector under existing law, as noted by the majority, Vaughn later submitted a second SSS form 150 in connection with the Selective Service appeal indicating his opinion that his belief fell within the confines of Seeger. The fact that the Nebraska deputy director proffered an appeal and thus a consideration of the merits of Vaughn's case suggests that Vaughn's claim was given serious consideration and was not deemed frivolous.[3] While in every case for a conscientious objector status, a registrant's sincerity is at issue, such matter concerns the merits and not the prelimi-

---

to an established church or formal religious doctrine is not a necessary requirement for conscientious objector status. For an excellent review of this area, Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 U.Chi.L. Rev. 686 (1968).

3. An appeal by a registrant can follow from a reopening of a classification, 32 C.F.R. 1625.13, or from an original classification, 32 C.F.R. 1625.2. This appeal by Vaughn was outside the regulations because there had been no reopening of the classification and the normal time to appeal the I–A classification of December 18, 1964, had expired.

nary determination whether the registrant has made out a prima facie case. Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Corliss, 280 F.2d 808 (2nd Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Walsh, 279 F.Supp. 115 (D.Mass. 1968). See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

On the basis of the information submitted to the Nebraska Selective Service headquarters, I believe that headquarters should have advised that Vaughn was entitled to a reopening and reconsideration of his classification by the local board. Such classification is for the local board in the first instance. When Vaughn was not granted a right of reconsideration by the local board, he was deprived of basic procedural protection granted him by the law and the regulations. United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Stain v. United States, 235 F.2d 339 (9th Cir. 1956); United States v. Vincelli, 215 F.2d 210 (2nd Cir. 1954); Knox v. United States, 200 F.2d 398 (9th Cir. 1952). See United States v. Griffin, 378 F.2d 899 (2nd Cir. 1967); Franks v. United States, 216 F.2d 266 (9th Cir. 1954). He was thus not permitted the basic right of a personal hearing before the local board. See United States v. Nugent, 346 U.S. 1, 8, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). This right to personal appearance affords the registrant the only opportunity under Selective Service procedures of personally appearing before a decision-making body to afford that body the opportunity to judge and test his sincerity on a man-to-man basis. This right should not be lightly denied.[4]

I believe the conviction here should be reversed. Nothing I have said bars the local board's reconsideration of Vaughn's claimed conscientious objector status in accordance with proper procedures if the conviction were set aside.

---

4. For a conscientious objector, the consequences of not prevailing at the administrative level can mean imprisonment. Judicial review is extremely limited. Thus, due process requirements here are not comparable to those in administrative proceedings relating to denial of admission to the bar discussed in *Willner*, fn. 8, majority opinion.