John Harris **FLEMING**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7742.

United States Court of Appeals Tenth Circuit.

April 30, 1965.

J. B. Tietz, Los Angeles, Cal., for appellant.

David A. Kline, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before PICKETT, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant was indicted, tried by the court without a jury and convicted on the charge of wilfully refusing to submit to induction into the armed forces of the United States, in violation of 50 U.S.C.A. App. § 462. The appeal is from that judgment of conviction.

On July 8, 1957, Fleming registered under the provisions of the Universal Military Training and Service Act, as amended, 50 U.S.C.A. App. § 451 et seq. He was a member of the Methodist Church at that time and did not claim the status of a conscientious objector. Subsequently while attending college, Fleming became a member of a pacifist organization known as the "Fellowship of Reconciliation" and also changed his church preference from Methodist to Unitarian. In July, 1960, the draft board notified Fleming that he was classified 1-A and in a "Dependency Questionnaire" he informed the draft board of the above facts and requested to be classified as a conscientious objector.

On July 31, 1960, Fleming filled out and returned to his draft board Selective Service System Form 150, which is a questionnaire for those persons claiming classification as conscientious objectors.

In this form, appellant claimed that by reason of religious training and beliefs, he was conscientiously opposed to participation in war in any form, including noncombatant training and service in the armed forces. He stated that he believed in a Supreme Being and, as the basis of his claim, described the nature of his belief in the language set forth in the margin.[1] Fleming explained that these beliefs had been acquired, in part, from his father who was a Methodist Minister and, more importantly, from his association with the Fellowship organization. In response to a question as to when force should be used, he stated: "Force should be used only as a final alternative and under fair circumstances. Self defense of a people would not involve war— but protection against a smaller group which could not be reconciled by intelligence and positive forces."

Thereafter, the draft board notified appellant that, in its opinion, he did not meet the requirements for a conscientious objector classification and continued to list him as 1-A. The Appeal Board affirmed the local draft board's classification.

Appellant took his physical examination and was found to be acceptable. On May 10, 1962, he was ordered to report for induction into the armed forces; but, on June 29, 1962, at the appellant's request, the Director of Selective Service appealed the classification of 1-A to a Presidential Appeal Board and his induction was postponed for 30 days. Appellant was classified 1-A by the Presidential Appeal Board and he was then ordered to appear for induction on September 13, 1962. He reported to the designated place on that date but refused to submit to induction and signed a written statement to that effect. This prosecution was then commenced under Section 12 of the Act, 50 U.S.C.A. App. § 462.

Section 6(j) of the Act, 50 U.S.C.A. App. § 456(j), is the source of the conscientious objector exemption. It pro-

1. "Any series of ideas which a person seriously holds, or a philosophy of life which a person seeks to adhere to, should be granted the respected classification of *religious* conviction. A supernatural authenticity need not verify a proposition to make it either religious or correct. However, my military objections are made in an effort to correlate human patterns with the cosmic order of God. I must state also that my position of objection is religious theologically not because of any 'superior human relation' alone, but also because of the sanctity of human relationships. I believe that we serve God through man; what is not good for man is not sufficient for the ultimate force. Because war is wrong for man—it is not consistent with the tenets of God.

"I feel that as humanity advances it is held responsible for adherence to the best principles of its present evolution. War is inadequate, and antiquated. Mankind has ceased to be necessarily bound to petty, uncontrolled emotions in many aspects of its interaction. We are now able to use positive forces of intelligence, love, goodness, etc. in a creative, active way to substitute for the destructiveness of war.

"In war innocent people die, unlike defense against personal injury. Here, in the area of personal defense too, it is my belief that positive forces should be used, and only as a final alternative should violence serve for protection.

"Let us remember that in war, sovereign notions are usually involved. This complicates the process of reconciliation. Also, in war there is not always a right side, but 'degrees' of correctness—as in World War I. And we must here state that a great percentage of our soldiers are innocent as they are ignorant of alternatives, of sociological processes, and are subject to the whims of irrational and unprogressive forces.

"Of course, in a larger sense, we are all responsible for our governments and for the state of world society. Along this line of thought—in answering our responsibilities—we are called to overcome the evils of the world with good. Concerning war, the good should be employed to preempt the war before it occurs and the good should be actively engaged to counterattack if war is initiated. In both instances, pacifists see their world citizenships.

"While there is room for some debate concerning the efficacy of pacificism in nonnuclear-prenuclear-age war, war in the nuclear age leaves no doubt. A limited war could break out into World War III, which would be catastrophic."

vides, in part: "Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code." Selective Service System Regulations provides: "In Class 1-O shall be placed every registrant who would have been classified in Class 1-A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces." (32 C.F.R. § 1622.14(a))

■ Of course, the exemptions from military service provided for in § 6 of the Act are matters of legislative grace and a selective service registrant claiming such an exemption has the burden of clearly establishing his right thereto. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Bouziden v. United States, 10 Cir., 251 F.2d 728, cert. denied, 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759; Bradshaw v. United States, 10 Cir., 242 F.2d 180. It is not the province of the courts to weigh the evidence on which a local draft board classifies any particular registrant for the purpose of determining if he has met the burden of establishing the exemption. The judicial inquiry is limited to determining whether there is any factual basis in that evidence for the classification and, if so, such inquiry is at an end. It is only when there is no basis in fact for the draft board's classification that it can be overturned and the registrant be justified in

refusing to obey the order of induction. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Dickinson v. United States, supra; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Bradshaw v. United States, supra; Rempel v. United States, 10 Cir., 220 F.2d 949; Roberson v. United States, 10 Cir., 208 F.2d 166. But, where a registrant makes a prima facie showing that he is conscientiously opposed to participation in war in any form, his claim of exemption can be rejected only if there is in his registration file some showing of a countervailing nature which tends to justify a finding by the classification board that it is not made in good faith. Dickinson v. United States, supra; Rempel v. United States, supra; Jessen v. United States, 10 Cir., 212 F.2d 897.

The definition of "religious training and belief" as set forth in § 6(j) has been recently upheld by the Supreme Court in United States v. Seeger, 85 S.Ct. 850. The Court interpreted § 6(j) broadly and stated that "* * * the test of belief 'in a relation to a Supreme Being' is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption. Where such beliefs have parallel positions in the lives of their respective holders we cannot say that one is 'in a relation to a Supreme Being' and the other is not." and that the test might also be stated as follows: "* * * A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

■ As we read the Seeger case, it clearly lays down the rule that before a conscientious objector classification may be denied on the ground that the applicant's beliefs are based upon "political, sociological, or philosophical views or a merely personal moral code", those factors must be the sole basis of his claim

for the classification. In other words: "The use by Congress of the words 'merely personal' seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being."

The record leaves no doubt but what Fleming does believe in a Supreme Being. It also clearly shows, and the Government admits, that he is sincere in his beliefs and there is therefore no necessity to search the record for a basis in fact to support a finding of insincerity.

■ Thus, Fleming claims, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form. He states that the source of his beliefs is a "rather 'religious' background" and his participation in the pacifist organization, which is itself a religious youth group. In a letter to his local draft board on August 11, 1960, appellant stated that he believed his objections to military service were religious ones and that " * * * I feel and think that God, the Supreme Being, or Truth condemns war as a method of settling conflict among peoples or for any other reason. Therefore, I believe that my pacifistic ideas and practices are a part of a superior relation to God, as *I believe* that 'His Will' does not condone or uphold this institution. * * * " The entire record clearly shows that his beliefs are, in part at least, based upon *religious* convictions. It may be true that appellant has been influenced, in the words of the hearing examiner " * * * more by sociological and philosophical views than by religious beliefs or the dictates of a deity." But, it is also clear that he has been influenced by religious training and belief. Therefore, Fleming comes clearly within the definition of a "conscientious objector" as defined by the Supreme Court in the three recent cases and the conviction must be reversed.

Reversed and remanded with directions to dismiss the indictment.