Elliott Ashton **WELSH, II**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21442.**

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1968.

Rehearing Denied Jan. 31, 1969.

Hamley, Circuit Judge, dissented.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Gabriel Gutierrez (argued), Asst. U.S. Atty., Wm. Matthew Byrne, Jr., U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Crim. Div., A. Michael Glassman, Asst. U.S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY and ELY, Circuit Judges, and POWELL, District Judge.

POWELL, District Judge:

This appeal is from a conviction of the appellant for refusal to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462. This Court has jurisdiction under Rule 37 of Federal Rules of Criminal Procedure and 28 U.S.C. § 1291.

The appellant Welsh registered with his local board on February 2, 1960. On December 11, 1961 the board received his completed classification questionnaire (SSS Form 100). He did not then claim to be a conscientious objector.

On December 14, 1961 the board classified the appellant I–A. On January 15, 1963 the board received appellant's application for a permit to leave the United States. The application stated that the appellant's classification was I–A. On February 5, 1963 the board issued a permit allowing the appellant to depart for a period of one year, which expired March 16, 1964. On March 27, 1964 the appellant was ordered to report for a physical examination. On April 10, 1964 appellant requested and was given a special form for conscientious objector (SSS Form 150). It was completed and received by the board on April 24, 1964. In that form the appellant stated that he was "by reason of * * * belief, conscientiously opposed to participation in war in any form." [1] The appellant had altered the statement in the form by striking out the words "my religious training and" so that the statement read as above. He answered the question, "Do you believe in a Supreme Being?" by putting an X in the box marked "No." [2] He attached a note explaining the nature of his beliefs.

On May 12, 1964 the appellant's local board classified him I–A–O, and on May 25, 1964 the appellant sent the local board a letter amending his SSS Form 150 to request classification as I–O. He claimed exemption from both combatant and non-combatant training and service and requested a personal appearance.

He appeared before the local board on June 9. On June 10 the board informed appellant that he was still classified I–A–O. On June 19, 1964 the board received a letter in which appellant stated he was appealing to the Appeal Board from the refusal to classify him as I–O.

On July 28, 1964 the Appeal Board tentatively determined the appellant should not be classified I–O or any lower class.

On November 15, 1965 the appellant's file was returned by the Appeal Board which classified appellant I–A by a vote

1. Plaintiff's Exhibit 1, at 17.

2. Id.

of 3–0. On November 22, 1965 the board mailed the appellant an order to report for induction on December 8, 1965. He reported to the induction center and refused to step forward when his name was called, thereby manifesting his refusal to submit to induction. This prosecution followed.

The appellant raises principal questions as follows:

1. Was the Selective Service System's denial of a conscientious objector classification to appellant without basis in fact and arbitrary, capricious and contrary to law?

2. Were the report and recommendation of the hearing officer and the Department of Justice to the Appeal Board arbitrary, capricious and illegal because based upon unlawful standards?

3. Was the appellant denied a fair hearing before the local board because the board gave appellant too short a hearing or failed to pass upon his eligibility for I–O classification?

4. Was the appellant denied a fair hearing before the Appeal Board in that neither he nor the Appeal Board was given the full report of the FBI or of the hearing officer made to the Department of Justice?

5. Was the appellant denied due process by the induction station's failure to give him an opportunity to complete DD Form 98, Armed Forces Security Questionnaire, as required by the regulations?

6. Did the local board thwart appellant's timely presentation of his request for classification as III–A based on his wife's pregnancy and thus deny him due process of law?

**I**

Appellant claims that the Appeal Board denial of I–O and I–A–O classifications was without any basis in fact. He also contends that insofar as the Appeal Board decision rested upon the "Supreme Being" clause of section 6(j) [3] it is premised upon an unconstitutional distinction between theistic and non-theistic religious beliefs.

In United States v. Seeger, 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733 (1965) the Supreme Court explicitly adopted the following test for evaluating conscientious objector claims:

"A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

A determinative question posed by application of the *Seeger* test to the facts of this case is whether the sufficiency of a registrant's beliefs is to be measured by strength or source or both. Unquestionably strength of belief (or sincerity) is an accepted criterion for judging conscientious objector claims. See United States v. Seeger, supra, at 185, 85 S.Ct. 850; Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The court in *Seeger* also noted, apparently with approval, that:

" * * * The section excludes those persons who disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it. * * * " United States v. Seeger, supra, 380 U.S. at 173, 85 S.Ct. at 858.

This quotation obviously contemplates a test based on the source of a registrant's beliefs. The belief is the same for both philosophical and religious objectors, that it is wrong to participate in war.

The government concedes that appellant's beliefs are held with the strength of more traditional religious convictions. But appellant constantly declared that his beliefs stemmed from

3. Universal Military Training and Service Act, § 6(j), 50 U.S.C. App. § 456(j). The "Supreme Being" clause was omitted from the recent reenactment of the draft law. Military Selective Service Act of 1967, § 7, 81 Stat. 101.

sociological, economic, historical and philosophical considerations. He denied that his objection to war was premised on religious belief. The Appeal Board was entitled to take him at his word, as he failed to meet the statutory standard, and to deny his request to be so classified.

Appellant next urges us to adopt the well reasoned opinion of Judge Kaufman in United States v. Seeger, 326 F.2d 846 (2d Cir. 1964), rev'd, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1964). That Circuit Court opinion held that the "Supreme Being" clause of section 6(j) unconstitutionally discriminated between theistic and non-theistic religious beliefs, 326 F.2d at 852–855. But in our case the Department of Justice recommendation quoted the test given above from *Seeger*. 380 U.S. 173, 85 S.Ct. 850. The facts and result of *Seeger* at the Supreme Court level lead to only one conclusion: the Supreme Court deleted the "Supreme Being" clause from the statute as Mr. Justice Douglas observed "in the candid service of avoiding a serious constitutional doubt." Concurring opinion of Douglas, J., United States v. Seeger, 380 U.S. at 188, 85 S.Ct. at 865 (1965) quoting from United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 97 L.Ed. 770 (1953). We see no need to consider the constitutionality of this clause because it was already *sub silentio* stricken from the statute and was so considered by the Department of Justice in this case.

The hearing officer found "no religious basis for the registrant's conscientious objector claim." [4] His conclusion was accepted by the Department of Justice which recommended that the Appeal Board deny appellant's claim for I–O classification. Appellant contends that this recommendation was bottomed on artificial and unlawful standards. In support of this contention appellant relies upon the following observations of the hearing officer: Appellant had not formulated an opinion on euthanasia; he had not formulated an opinion on birth control and, more precisely, upon the question of when life begins in the womb; appellant did not believe in life after death; he did not believe in God or any other entity with authority over man.

■ A Department of Justice recommendation premised upon an error of law vitiates an Appeal Board classification. Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955). In Shepherd v. United States, 217 F.2d 942, 946 (9th Cir. 1954) the hearing officer concluded that Shepherd's willingness to participate in theocratic warfare negated his claim of conscientious objection. This court held this conclusion was wrong as a matter of law and reversed Shepherd's conviction. In Bradley v. United States, 218 F.2d 657, 663 (9th Cir. 1954), rev'd on other grounds, 348 U.S. 967, 75 S.Ct. 532, 99 L.Ed. 754 (1955), the hearing officer observed that Bradley believed in using force in self-defense. But the hearing officer did not conclude that this fact negated Bradley's claim. The court distinguished between a legally insufficient adverse conclusion and mere observation of facts which, had they led to an adverse conclusion, would have been legally insufficient to support it. Bradley v. United States, supra, at 663 n. 9. The observations upon which appellant relies were only observations of fact. We assume, arguendo, that none of them necessarily negates appellant's claim for conscientious objector classification. See United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). But the hearing officer did not conclude that these observations negated appellant's claim. The distinction drawn in Bradley v. United States, supra, between observations of fact and conclusions of law, controls.

■ Appellant also suggests that these observations were improper. But appellant altered the Special Form For Conscientious Objectors, denying a religious basis for his beliefs and denying

---

4. Plaintiff's Exhibit 1, at 42.

belief in a Supreme Being. These alterations raised uncertainty about the "religious" quality of his beliefs. The purpose of the hearing officer's inquiry is to explore uncertainties. MacMurray v. United States, 330 F.2d 928, 932 (9th Cir. 1964). How can the hearing officer proceed without inquiring into the application of a registrant's beliefs to ethical, religious, moral and philosophical problems? And what function would the inquiry serve if a registrant's answers could not be transmitted through the Department of Justice to the Appeal Board?

Appellant contends that he was denied a fair hearing before the local board. Specifically, he contends that his personal appearance was too short and that the local board failed to pass upon his eligibility for I–O classification.

█ When appellant appeared before the local board he declared that he felt his classification should be I–O rather than I–A–O. The reasons for this request, he said, were detailed in his letter of May 25, 1964 (which also contained his request for personal appearance and notice of appeal). He made no attempt to present additional material to the board. Selective Service Regulation 1624.2(B), 32 C.F.R. § 1624.2(b), affords a registrant the opportunity to present "further information." But no regulation requires a board to question a registrant when he says his position has already been stated. Appellant's hearing was short because he had nothing further to say.[5] No unfairness appears in this respect. See Martin v. United States, 190 F.2d 775, 778–779 (4th Cir.), cert. den., 342 U.S. 872, 72 S.Ct. 115, 96 L.Ed. 656 (1951).

██ Appellant's contention that the local board failed to pass upon his I–O claim is based upon a letter he wrote after his personal appearance. In that letter he states: "Then one of the board members said 'we don't have authority to pass upon his classification. It will have to go to the Appeal Board.'"[6] If this statement was made as quoted the board member was mistaken. Selective Service Regulations contemplate a decision by the local board following personal appearance of a registrant. 32 C.F.R. § 1624.2(c). Failure to render a decision vitiates a later classification by the Appeal Board. Knox v. United States, 200 F.2d 398 (9th Cir. 1952). But it does not appear that this statement was made as quoted. In his letter appellant continues: "This quotation is as close as I can recall. A secretary was transcribing the conversation so the statement should be a matter of record."[7] The "record" to which appellant refers states: "Registrant was informed that since he has appealed the I–A–O classification, his file would go to the Appeal Board and they would investigate to determine whether or not he qualifies for a I–O classification."[8] There is no reference to local board jurisdiction, nor any explicit statement that the board would not render a decision. The record is consistent with the probability that the board was informing appellant that his claim was being denied. In fact this appears to be what happened, for the next day appellant received a new notice of classification from the local board informing him that he was being retained in class I–A–O.[9] This case is distinguishable from Knox v. United States, supra; the presumption of regularity which was overcome in that case governs here.

Appellant contends he was denied a fair hearing before the Appeal Board because neither the Appeal Board nor

---

5. "I appeared before the board to answer questions about my appeal and to explain my position in the light of those answers. I asked whether any members of the board had any questions about my appeal. They had none." Appellant's letter of June 18, 1964, Plaintiff's Exhibit 1, at 31–32.

6. Id. at 32.

7. Plaintiff's Exhibit 1, at 32.

8. Plaintiff's Exhibit 1, at 29.

9. The notice of classification is not mailed until a decision to reclassify or to deny reopening is reached by the board. 32 C.F.R. § 1624.2(d).

appellant was provided with the full report of the FBI investigation or the full report of the hearing officer.

■■■ We think appellant's contention directed to the Department of Justice's refusal to provide him with a full copy of the FBI investigative report is without merit. In United States v. Nugent, 346 U.S. 1, 5, 73 S.Ct. 991, 994, 97 L.Ed. 1417 (1953), the Court held:

" * * * We think that the statutory scheme for review, within the selective service system, of exemptions claimed by conscientious objectors entitled them to no guarantee that the FBI reports must be produced for their inspection. * * * "

Appellant attempts to distinguish *Nugent* because the registrant in that case did not request a copy of the report. This factor was noted by the Court. United States v. Nugent, supra, at 7 n. 10, 73 S.Ct. 991. But as the quotation above indicates the Supreme Court did not so restrict its decision. Nor can we see any reason why it should be so restricted.

To refute appellant's contention that the entire FBI record should have been forwarded to the Appeal Board it is only necessary to advert to the identical circumstances in United States v. Nugent, supra, at 7 n. 10, 73 S.Ct. 991.

The same rationale applies to appellant's complaint about the Department of Justice's failure to provide either appellant or the Appeal Board with the hearing officer's full report. The analogy is strengthened by appellant's presence at the hearing and his consequent knowledge of what transpired there. This knowledge largely obviates the objections to the majority opinion in *Nugent* expressed by Mr. Justice Douglas in dissent. Contentions identical to those made by appellant were considered in DeRemer v. United States, 340 F.2d 712, 715–717 (8th Cir. 1965). Drawing upon the body of administrative law, and especially considering the unavailability of intra-agency memoranda, the court rejected these contentions. So do we.

Appellant contends his reply to the Department of Justice recommendation supplied by him in accordance with 32 C.F.R. § 1626.25(e), was never placed before the Appeal Board and that this procedural irregularity vitiated the classification process. He testified:

"I took the rebuttal to the Appeal Board. * * * [F]inally a clerk came out of her room, and she asked me what I wanted, and I said that I had the letter for the—letter of rebuttal to the Attorney General's letter for the Appeal Board. She said, 'Oh, yes, * * * ' And she said 'Well, I'll see that the Board gets a summary of this letter.' And I said, 'You mean they don't see the letter.' And she said, 'Well, they could if they wanted but they usually don't have a great deal of time and they usually read the summary.'" Record, Vol. 2, at 23.

■■■ "It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown." Lewis v. United States, 279 U.S. 63, 73, 49 S.Ct. 257, 260, 73 L.Ed. 615 (1929) (alternative holding). Keene v. United States [10] explained the foundation of this presumption:

"The presumption which attends these proceedings [local board level] is founded in the policy of the law, and is derived from the faith and credit

10. 266 F.2d 378, 380 (10th Cir. 1959). Keene contended that the board which classified him acted without a quorum. A board or panel thereof consists of three or more members. 50 U.S.C. App. § 460(b) (3). A majority of the members of the board or panel constitutes a quorum. 32 C.F.R. § 1604.52a(d). The vote which classified Keene was 2–0. Another vote, four years later, was 4–0. If the number of board members had not changed (and there was no evidence on this point either way) the initial vote was taken without a quorum. The court recognized that lack of a quorum might be inferred, but held this evidence insufficient to overcome the presumption of regularity.

we owe to official acts of duly constituted authority. As such, it is legally sufficient to sustain the burden of regularity and validity until dissipated by some probative evidence to the contrary."

See also, 9 Wigmore, Evidence §§ 2490, 2491 (3rd Ed. 1940); ALI Model Code of Evidence, Rule 704, Introductory Note to Chap. VIII (presumptions), Morgan, Forward at 52–65 (1942). There is no showing that the Appeal Board did not receive or consider appellant's letter. This is merely an inference which might, but need not, be drawn. As such, it is insufficient to overcome the presumption of regularity. Keene v. United States, supra, note 10.

## II

Before being given an opportunity to submit to induction appellant was asked to re-execute his Armed Forces Security Questionnaire, DD Form 98. He stated that some of the answers he gave the year before would no longer be correct and refused to re-execute the form. AR 601–270, ch. 4, § II, para. 80(b) (2) at 4–7 (1965) declares that a registrant who refuses to execute DD Form 98 will "not be inducted into the Armed Forces pending completion of a thorough investigation." The investigative process is detailed in AR 604–10, § III, para. 18 (1959); 604–10, §§ IV, V (1959). Rather than delay appellant's induction pending investigation, induction station personnel ordered him to step forward. Appellant now contends that this procedural irregularity vitiates the command to step forward and, therefore, his conviction. We cannot agree.

▮ The rule is well established that "procedural irregularities or omissions which do not result in prejudice to the registrant are to be disregarded." Knox v. United States, 200 F.2d 398, 401 (9th Cir. 1952). See Edwards v. United States, 395 F.2d 453 (9th Cir., May 10, 1968). Appellant did not offer to prove that an investigation by military intelligence would have uncovered evidence that he was a security risk.

None of the factors which have led us to presume prejudice from procedural omissions are present in this case. Comparison of appellant's contentions with our decision in Briggs v. United States, 397 F.2d 370 (9th Cir. June 26, 1968) will illustrate the absence of these factors. In *Briggs,* induction station personnel denied the registrant a physical inspection required by AR 601–270, ch. 3, § III, para. 69 (1965). We presumed prejudice and reversed. A registrant's failure to take physical examinations precludes him from challenging his classification; he is said to have failed to exhaust his administrative remedies. See the discussion of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305 (1944) in Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). The Army's refusal to give a physical inspection should bear equivalent consequences.

▮ Execution of DD Form 98 has not been held to be an administrative remedy which the registrant must exhaust. Also, a medical deferment is granted at least partially for the benefit of the individual registrant. But rejection by the Army for security reasons, like rejection for felony conviction, is wholly for the benefit of the Army and may be waived. See Nickerson v. United States, 391 F.2d 760, 762–763 (10th Cir. 1968); Bjorson v. United States, 272 F. 2d 244, 249 (9th Cir. 1959), cert. den., 362 U.S. 949, 80 S.Ct. 859, 4 L.Ed.2d 867 (1960), overruled in part and on other grounds in Daniels v. United States, 372 F.2d 407, 414 (9th Cir. 1967); Korte v. United States, 260 F.2d 633, 637 (9th Cir. 1958), cert. den., 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959).

▮ The overriding objective of selective service is "to raise an army speedily and efficiently." Falbo v. United States, supra, 320 U.S. at 553, 64 S.Ct. at 348. But appellant would have us presume prejudice from the Army's refusal to conduct a useless investigation of his political and social background. Without a real showing of prejudice there is no

reason to require such a waste of military intelligence resources. Nor should any obstinate inductee be given an opportunity to delay his induction for possibly months by refusing to execute the security questionnaire.

## III

Appellant claims that he should have been granted a III–A (dependency) deferment. He argues that proper presentation of his request for this deferment was thwarted by the local board clerk. Appellant testified that he visited his local board to inform it that he had moved and that his wife was pregnant and that he and his wife had made an appointment with a doctor to confirm the pregnancy. He further testified:

> "When I asked if I could give the board more information than I had given them, I had filled out an address, change of address form, the clerk said to me, 'What is your classification?' I said 'my classification is I–A–O.' The clerk then said 'If we want any more, if we want any more information from you, we'll send you a form.'
>
> Q. Did that form ever come?
>
> A. No sir." Record, Vol. 2 at 19.

 This evidence does not support appellant's contention that assertion of a III–A claim was thwarted by the clerk. Nowhere does it appear that appellant told the clerk his wife was pregnant. It is probable that the clerk thought appellant was referring to further evidence in support of his I–A–O classification (conscientious objector available for non-combatant duty). Because appellant had already received this classification, to the best of the clerk's knowledge additional supporting information was unnecessary. As appellant relates it, although he was thinking of his wife's pregnancy, he spoke to the clerk only generally of "more information." It was appellant's duty to request the III–A deferment in writing accompanied by a doctor's certificate. 32 C.F.R. §§ 1625.2 (writing), 1622.30(c) (3) (certificate of pregnancy). The requirement of a writing is mandatory and must be followed if the deferment is to be granted. Shaw v. United States, 264 F.2d 118, 119–120 (9th Cir. 1959).

 Appellant submitted with his brief evidence of his present III–A status.[11] While this provides appellant with a present deferment, it has no bearing on the validity of his I–A classification at the time he refused to submit to induction. Cox v. United States, 332 U. S. 442, 454, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Gatchell v. United States, 378 F.2d 287, 292 (9th Cir. 1967).

Affirmed.*

HAMLEY, Circuit Judge (dissenting):

As stated in the majority opinion, the Hearing Officer found "no religious ba-

---

11. Appendix B to Appellant's Opening Brief.

* Note: The dissenting opinion of Judge Hamley, while based on other grounds, mentions the possible unconstitutionality of the "religious training and belief" provision of section 6(j) of the Act. The majority feels that since it was not listed as one of the questions presented in appellant's opening brief or argued there it does not require comment in the majority opinion. The only error claimed is the denial of the motion for judgment of acquittal and this question was not presented in that motion.

The majority feels that any application for relief under 28 U.S.C. § 2255 on this ground would find no support in this rec-

ord and would be met by the prior holdings of this court sustaining the religious exemption against Establishment Clause attack. Etcheverry v. United States, 320 F.2d 873, 874 (9th Cir.), cert. den., 375 U.S. 930, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963), reh'r den., 375 U.S. 989, 84 S.Ct. 515, 11 L.Ed.2d 476, 376 U.S. 939, 84 S.Ct. 791, 11 L.Ed.2d 660 (1964), 380 U.S. 926, 85 S.Ct. 878, 13 L.Ed.2d 813 (1965); Clark v. United States, 236 F.2d 13, 23–24 (9th Cir.), cert. den., 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80, reh'r den., 352 U.S. 937, 77 S.Ct. 219, 1 L.Ed.2d 169 (1956); George v. United States, 196 F.2d 445, 450–452 (9th Cir.), cert. den., 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952).

sis for the registrant's conscientious objector claim." His conclusion was accepted by the Department of Justice as the basis for its recommendation to the Appeal Board that Welsh's claim for a I–O or I–A–O classification be denied. The Appeal Board implicitly followed that recommendation in denying either of these classifications. The majority holds that, under the circumstances of this case, there was no judicially cognizable administrative error in this regard which undermines the conviction. I respectfully disagree.

In reaching its conclusion, the majority addresses itself to two questions: (1) was the Appeal Board's denial of I–O or I–A–O classifications without any basis in fact? and (2) does the Appeal Board decision rest upon an unconstitutional distinction between theistic and non-theistic religious beliefs? The majority gives a negative answer to both of these questions.

Concerning the second question, I agree with the majority holding, and for the reasons stated in the majority opinion. The Appeal Board decision is not premised upon the "Supreme Being" provision of section 6(j). The Department of Justice report, on the basis of which the Appeal Board acted, noted that, under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, the term "Supreme Being" was given such a broad reading that, in effect, it added nothing to the "religious training and belief" clause.

But the majority has failed to discuss another facet of the constitutional question, namely whether, apart from the "Supreme Being" clause, in predicating its decision on the "religious training and belief" clause of section 6(j), the Appeal Board violated the Establishment of Religious Clause of the First Amendment.

In my opinion this latter question is clearly presented on this appeal because it is inherent in any attack upon the statute predicated upon the Establishment of Religion Clause of the First Amendment. Thus it is immaterial that, in his opening brief, Welsh did not discuss this precise issue other than to point out that the sincerity of his conscientious objection was not only established by the undisputed evidence, but was conceded by the Hearing Officer.

Defendant naturally concentrated his attention in that brief on the broad reading which Seeger gave the Supreme Being and religious training and belief clauses of the statute. If he prevailed on that argument he did not need a ruling that the statute was unconstitutional as applied, just as the Supreme Court, in Seeger, avoided the constitutional issue by giving the statute a broad reading. But there was implicit in defendant's presentation his underlying position that, unless given that broad reading here, the statute is unconstitutional as applied. If the opening brief leaves any doubt as to defendant's basic constitutional position, it was amply clarified in his reply brief, where defendant said:

"If this Court should hold that appellant's belief is outside the scope of the Act, then the constitutionality of the Act is in issue. For the reasons cited by the Second Circuit at 326 F.2d 846, appellant respectfully submits that the granting of privileges to the religious which are not granted to the non-religious upon the same basis is an establishment of religion and violates the guarantees of the First Amendment and the Due Process clause of the Fifth Amendment."

I believe this question is in the case and should be squarely met by the majority before it concludes that the conviction should be affirmed. Indeed, it is futile to affirm without deciding this constitutional issue for, unless decided here, it can be immediately renewed in a proceeding under 28 U.S.C. § 2255 (1964). As indicated below, the only reason I do not grapple with that constitutional issue in this dissent is because I would reverse on other grounds.

As the majority points out in the note attached to their opinion, any application for relief on this ground under 28 U.S.C. § 2255 would be met by several adverse holdings of this court. But experience

teaches that constitutional pronouncements by the courts are always open for reconsideration. The Ninth Circuit decisions cited in the note to the majority opinion seem to rest, in the final analysis, on the reasoning that whatever the Government may take away altogether (such as exemption from military service) it may grant on any condition it chooses (such as religious training and belief). I do not believe this reasoning is acceptable in the present constitutional climate.

While deferment on the ground of conscientious objection is a privilege, it cannot be granted or withheld on unconstitutional grounds. United States v. Seeger, 2 Cir., 326 F.2d 846, 851, affirmed on other grounds, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733. See also, Sherbert v. Verner, 374 U.S. 398, 404–405, 83 S. Ct. 1790, 10 L.Ed.2d 965, and note 6 and cases there cited; Baggett v. Bullitt, 377 U.S. 360, 380, 84 S.Ct. 1316, 12 L.Ed.2d 377; Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed. 2d 629. The majority recognizes this when it discusses, on the merits, the first of the two constitutional questions referred to above.

The dimensions of the constitutional problem which the majority opinion does not discuss become clear when note is taken of relevant observations in past decisions of the Supreme Court.

In Everson v. Board of Education of Township of Ewing, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, the Supreme Court said:

"The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, *aid all religions*, or prefer one religion over another. Neither can force nor influence a person to go to or remain away from church against his will or force him to profess *a belief or disbelief in any religion*. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." (330 U.

S., at 15–16, 67 S.Ct., at 511, emphasis supplied)

This language was quoted with approval in People of State of Ill. ex rel. McCollum v. Board of Education, 333 U. S. 203, 210, 68 S.Ct. 461, 92 L.Ed. 649, in which the Court rejected a strenuous effort to have the quoted language disregarded as dicta, or to have it repudiated. In Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982, the Supreme Court again quoted the *Everson* language with approval, and added:

"We repeat and again reaffirm that neither a State nor the Federal Government can constitutionally force a person 'to profess *a belief or disbelief in any religion.*' Neither can constitutionally pass laws or impose requirements *which aid all religions as against non-believers,* and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs." (367 U.S., at 495, 81 S.Ct., at 1683, footnotes omitted and emphasis supplied)

The broad interpretation given by the Supreme Court in *Everson* to the Establishment Clause of the First Amendment, was again approved in McGowan v. State of Maryland, 366 U.S. 420, 442, 81 S.Ct. 1101, 6 L.Ed.2d 393. And in Abington Tp. School District v. Schempp, 374 U.S. 203, 216, 83 S.Ct. 1560, 1568, 10 L.Ed.2d 844, the Supreme Court, once more quoting *Everson,* stated that it has "rejected unequivocally the contention that the Establishment Clause forbids only governmental preference of one religion over another."

None of these Supreme Court decisions dealt with the constitutionality of the "religious training and belief" provision of section 6(j) of the Act now in question. But, to say the least, the rationale of these other decisions provides fodder for a strong argument that the "religious training and belief" provision of section 6(j) cannot withstand a constitutional challenge.

It is in this setting that I turn to the first question dealt with by the majority

on this branch of the case. But for the majority holding that the Appeal Board denial of I–O and I–A–O classifications has a basis in fact because there is evidence to indicate that Welsh's conscientious objections are not premised on "religious belief," we would not have to reach the constitutional questions. It may be added that it is acceptable appellate practice to give statutory language a broad or narrow reading if, by so doing, the constitutionality of the statute can be saved. In effect, this is what the Supreme Court did in *Seeger,* in construing the term "Supreme Being." As Justice Douglas said in his concurring opinion in that case:

> "The legislative history of this Act leaves much in the dark. But it is, in my opinion, not a *tour de force* if we construe the words 'Supreme Being' to include the cosmos, as well as an anthropomorphic entity. If it is a *tour de force* so to hold, it is no more so than other instances where we have gone to extremes to construe an Act of Congress to save it from demise on constitutional grounds. In a more extreme case than the present one we said that the words of a statute may be strained 'in the candid service of avoiding a serious constitutional doubt.' United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 97 L.Ed. 770." (380 U.S. at 188, 85 S.Ct. at 865, footnote omitted)

In holding that there is a basis in fact for the Appeal Board's determination that Welsh's conscientious objection is not based on religious training and belief, the majority reasons: (1) that, under *Seeger,* the sufficiency of a registrant's conscientious objection is to be measured by the *strength* of the objection plus the *source* of the objection; (2) Welsh's objection has the requisite strength, as the Government concedes; but (3) his objection does not have the requisite source, because it is not premised upon a religious belief.

I agree that, under section 6(j) of the Act, as construed in *Seeger,* the conscientious objection must be of a religious nature. But, having regard for all of the circumstances of this case, I do not believe that there is a basis in fact for a determination that Welsh's objection was not of a religious nature in the statutory sense.

It is now necessary to review, in considerable detail, the statements made by Welsh, in the administrative proceedings, concerning the basis of his conscientious objection.

In his conscientious objector form, signed on April 24, 1964, Welsh struck the words "my religious training and" from the statement of the source of his conscientious objection. He checked the "no" square opposite the question, "Do you believe in a Supreme Being?" In one item of this form, Welsh was requested to describe the nature of his belief and whether his "belief in a Supreme Being involves duties which to you are superior to those arising from any human relation." The quoted portion of this item was not applicable to Welsh because he had already indicated that he did not believe in a Supreme Being. This probably explains why, in an attached sheet giving his answer to this inquiry, Welsh stated that his belief that one should abstain from violence toward another person:

> "is not 'superior to those arising from any human relation.' On the contrary, *it is essential to every human relation.*" (Emphasis in original.)

In this attached sheet Welsh added that he could not conscientiously comply with the Government's insistence that he assume duties which he feels "are immoral and totally repugnant." In answer to another inquiry in this form, Welsh attached another sheet stating, among other things, that he came to his realization that it is wrong to wilfully kill or injure another through a series of conversations with a number of pacifists.

At the time Welsh made these statements, section 6(j) defined "religious training and belief" as "an individual's belief in a relation to a Supreme Being involving duties superior to those arising

from any human relation. \* \* \*" The "Supreme Being" provision of the religious test was dropped from section 6(j) on June 30, 1967. 81 Stat. 100–104.

The Supreme Court did not decide *Seeger* until March 8, 1965. In that decision, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733, the Supreme Court made it clear that one could have a religious belief within the meaning of section 6(j) of the Act without believing in a Supreme Being as that term is usually understood.

The *Seeger* decision had been issued when Welsh next made statements to the administrative agency concerning the basis of his conscientious objection, in a letter dated June 22, 1965. Apparently by that time he had been told that the term "Supreme Being," as used in the statute, may have a broader meaning than he had originally supposed. Nevertheless, as indicated by footnote 3 in that letter, Welsh was still puzzled concerning the extent to which, if any, the "Supreme Being" clause affected the "religious training and belief" test of section 6(j).

In his letter of June 22, 1965, Welsh went on to explain that it is his belief that each of us possesses "some sort of ethical apparatus, a conscience, if you will." Expressing the view that it is impossible to assert the absolute truth or falsity of an ethical law Welsh adds, in a footnote, extensive quotations from Ludwig Wittgenstein, Logisch-philosophische Abhandlung, Routledge & Kegan Paul, London, 1963, page 145, translated by D. F. Pears and B. F. McGuinness. Among the quotations thus approved by Welsh is one to the effect that the sense of the world must lie outside the world. According to this writer,

> "If there is any value that does have value, it must lie outside the whole sphere of what happens and is the case."
>
> \* \* \* \* \* \*
>
> "Ethics is transcendental."

At a later point in this letter, Welsh states that, in our failure to recognize the political, social and economic realities of the world we, as a nation, fail our responsibility as a nation. He also inquires, "To what degree are we economically and socially committed to 'look for' aggression?" He added, in another footnote, "I am afraid reason has already subverted my commitment to the military ethic."

On July 15, 1965, Welsh was interviewed by Owen J. Brady, a Department of Justice Hearing Officer. During that inquiry, Welsh submitted a copy of his letter of June 22, 1965, as "Exhibit A." In a six-page letter dated August 23, 1965, the Department of Justice gave the Appeal Board a report based on this inquiry. Among other things, this report recites that Welsh attended a Sunday School weekly from age twelve to age sixteen or seventeen, but had not attended a church since then, except on five or six occasions. According to this report, Welsh stated that his mother made him attend Sunday School and he "never got anything out of it."

Based on his questioning of Welsh, the Hearing Officer reported that Welsh has no belief in the existence of God or a Supreme Being, but believes in the "natural law" as a force outside of men, such force not being an entity. According to the Hearing Officer, Welsh described "natural law" as laws affecting the relationship of human beings such as the feeling of gregariousness; and was of the view that ethics are implicit within us governing the conduct of individuals. Welsh, the report states, does not believe in a life after death or in what might be called a human soul.

The report states that Welsh reiterated that he did not believe in taking a human life but he did not see it as a moral or religious wrong but simply as a social "error," or illogical act. The Hearing Officer reported that several times Welsh denied that any of his thinking had a religious basis. Welsh, according to this report, stressed that his opinions have been formed by reading in the fields of history and sociology, and that they are purely "natural" as opposed to religious. The Hearing Officer found that the registrant is sincere in his convictions but that his ideas are incomplete

and are in the process of formulation. The Hearing Officer found no religious basis for the registrant's conscientious objector claim.

On October 13, 1965, Welsh wrote an eight-page letter to the Appeal Board commenting upon the Department of Justice report summarized above. Among other things, Welsh stated in his letter:

"* * * I assumed Mr. Bradley was using the word 'religious' in the conventional sense, and, in order to be perfectly honest did not characterize my belief as 'religious.' I do believe the taking of life—anyone's life—to be morally wrong. It is not anyone's business to take anyone's life."

In this letter, Welsh also made the following significant comments:

"* * * I certainly do not mean to imply, that the religious training I received there [in Sunday School] had *nothing* to do with the ethical or moral values I live by." (Emphasis in original.)

"* * * Mr. Bradley insisted upon describing what I called 'natural law' as a 'force,' whereas I simply meant 'natural law' to be taken as 'the laws of nature.' The laws of nature are 'outside,' or beyond the control of men, but it is to perpetuate a semantic absurdity to characterize either 'natural law' or 'force' as an 'entity,' and in trying to avoid doing so I may have caused Mr. Bradley to misunderstand me."

"* * * I believe both ethical and religious values usually arise from the same source: the individual's concern for other individuals."

"* * * This concern [each individual's concern for the rest], it seems to me, is implicit in all religious belief, even the most primitive, where, though its expression seems sometimes to be bizarre, it still acts to govern people's relationships, one to another."

"This, I suppose, is the crux of my problem of explaining my beliefs in religous terms. Perhaps I erred in taking such pains to point out that I not believe in the 'standard notion' of God. I think my beliefs could be considered religious, in the sense I have just explained. I do not *call* myself religious, simply because most people then assume that I believe in God, in the conventional sense." (Emphasis in original.)

These observations by Welsh are in the last statement he filed in the administrative proceeding and are the best evidence of the nature of his conscientious objection. In appraising them we should give heed to this statement in the *Seeger* opinion:

"While the applicant's words may differ, the test is simple of application. It is essentially an objective one, namely, does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption?

"Moreover, it must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." (380 U.S. at 184, 85 S.Ct. at 863).

It seems to me that, read as a whole, with particular emphasis upon his last statements, Welsh's disclaimer of a religious motivation was predicated upon a misunderstanding of the statutory meaning of the term, as construed in *Seeger*. When he fully realized the broad reading which *Seeger* gave to that term, Welsh made it clear that he did have a religious motivation. Accepting that premise, the fact that his belief was also predicated in part on political, sociological or philosophical views, is immaterial. Likewise, although Welsh may have predicated his belief to a substantial extent on a personal moral code, that was not

the sole basis of his belief. As the Supreme Court said in *Seeger:*

"We have construed the statutory definition broadly and it follows that any exception to it must be interpreted narrowly. The use by Congress of the words 'merely personal' seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being. It follows, therefore, that if the claimed religious beliefs of the respective registrants in these cases meet the test that we lay down then their objections cannot be based on a 'merely personal' moral code." (380 U.S. at 186, 85 S.Ct. at 864)

See, also, Fleming v. United States, 10 Cir., 344 F.2d 912, where the court said:

"As we read the Seeger case, it clearly lays down the rule that before a conscientious objector classification may be denied on the ground that the applicant's beliefs are based upon 'political, sociological, or philosophical views or a merely personal moral code', those factors must be the sole basis of his claim for the classification." (344 F.2d at 915–916)

It is important to remember that the statute does not distinguish between externally and internally derived beliefs. *Seeger*, 380 U.S. at 186, 85 S.Ct. 850. Once it is determined that the basic belief does not derive exclusively from political, sociological or philosophical views, or a purely personal moral code, the source of the belief ceases to be a relevant subject of inquiry. The question then is only whether it is held with the requisite strength. Under *Seeger*, 380 U.S., at 176 and 184, 85 S.Ct. 850, it is held with the requisite strength if it occupies the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption.

As I appraise this record, there is no basis in fact for holding that Welsh's beliefs on which his conscientious objection is premised, do not occupy this place in his life. He is willing to go to jail rather than do violence to his beliefs, which is more than can be said for many who profess a belief in a Supreme Being.

Moreover, I am not sure that the correctness of the Appeal Board's determination as to the adequacy of Welsh's beliefs is to be judged by whether there is any basis in fact for such determination. The Supreme Court did not seem to apply such a measure in applying the principles announced in *Seeger* to the three cases decided under that title. It is probably just a question of whether the Appeal Board applied the right test. In my opinion it did not.

I thus do not reach the critical constitutional question of whether the "religious training and belief" provision of section 6(j) of the Act, as here applied, violates the "Establishment of Religion" Clause of the First Amendment. The result reached by the majority represents a negative answer to that constitutional question, but the majority has not said why.

I would reverse.