**UNITED STATES of America,
Plaintiff,**

v.

**Marc Anthony LEWIS, Defendant.**

**No. 66–CR–135.**

United States District Court
E. D. Wisconsin.

Dec. 1, 1967.

James B. Brennan, U. S. Atty., by Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

William J. Mulligan, Milwaukee, Wis., for defendant.

## OPINION AND ORDER DENYING MOTION TO REMAND

REYNOLDS, District Judge.

Marc Anthony Lewis was indicted on September 29, 1966, for violating the Universal Military Training and Service Act in that he refused to submit to induction on June 22, 1966, after having been classified 1–A.

On October 10, 1966, on motion of the United States Government, this court entered an order giving Lewis permission to return "to Eutaw, Alabama, * * * for the purpose of working as a staff member of the Student Non-violence Coordinating Committee subject to the call of this Court for any further proceedings." On November 14, 1966, an attorney was appointed to represent him under the Criminal Justice Act. He entered a plea of "not guilty" on May 31, 1967.

This case is presently before this court on Lewis' motion to remand this matter to the Selective Service System for further consideration of his claim that he is entitled to a conscientious objector classification. This court held an evidentiary hearing on July 28, 1967, which, together with stipulations of counsel, revealed the facts set forth below.

Lewis is an intelligent, idealistic twenty-two year old Negro who was born in Milwaukee, Wisconsin, on July 8, 1945. He graduated from Milwaukee's Riverside High School and completed two years at Howard University. In recent years he has been active in the civil rights movement. He has participated in demonstrations in Milwaukee as well as registering Negroes to vote in Alabama.

He has worked with the Milwaukee United School Integration Committee, Southern Christian Leadership Conference, and the Student Non-violent Coordinating Committee.

On May 17, 1965, Lewis registered for the draft and completed his Classification Questionnaire (SSS Form 100) wherein he did not claim to be a conscientious objector.

On May 24, 1965, he was classified 1–A by Local Board #44 and was sent notice of his classification which included a notice of his right to appeal. He testified that when he received this notice, he "looked at it" but at that time gave no thought to appealing his 1–A classification. Shortly after May 1965, he left Milwaukee for Eutaw, Alabama.

On July 23, 1965, he was ordered, by mail, to report for a physical examination on August 13, 1965, and he failed to report; on August 27, 1965, he was ordered, by mail, to report for a physical examination on September 17, 1965, and he failed to report; on September 23, 1965, he was ordered, by mail, to report for a physical examination on October 6, 1965, and he failed to report; and on November 9, 1965, for the fourth time, he was ordered, by mail, to report for a physical examination on November 29, 1965. On November 29, 1965, he did report for his physical examination.

 Defendant stated that he received "several" notices to report for a physical examination while he was living in Eutaw but ignored them all until November 29, 1965, when he complied by coming to Milwaukee for the examination. He indicated that on December 16, 1965, since the problem of military service had become "more pressing," he picked up a form for conscientious objectors. At that time he felt he could not in good conscience join the Armed Forces because he was "black and American." [1] But he did not fill out the con-

---

1. During the hearing, the defendant described himself as a "conscientious ob-

jector" for the reason that he was "black and American." This remark nicely illus-

scientious objector form at that time and thinks that he lost it in January of 1966.

On January 31, 1966, a statement of acceptability was mailed to Lewis. On March 1, 1966, he was ordered to report for induction on March 18, 1966, but he failed to do so. Instead, he filed a conscientious objector form with his Board on March 21, 1966.

Although defendant had failed to report for induction on March 18, 1966, his Board proceeded to consider his conscientious objector claim. On May 16, 1966, the Board denied his application and on May 17, 1966, mailed to him in Eutaw a Notice of Classification as 1–A along with a notice of his right to appeal and to a personal appearance. Lewis admits living at this address during the month of May but denies receiving this notice.

On June 3, 1966, an order to report for induction in Milwaukee on June 22, 1966, was sent to Lewis in Alabama. He admits receiving this order "early in June." He made no effort to contact his local board until the afternoon of June 21, 1966. On that day he made two phone calls from Milwaukee to his Board and to the State headquarters in Madison. The Draft Board personnel told defendant that he no longer had a right to pursue his claim to a different draft status. On June 22, 1966, he reported to the induction center but refused to submit to induction.[2]

The above-stated facts indicate neither excusable neglect on the part of the defendant nor unfairness on the part of the Draft Board. The course of conduct of the defendant can only lead to the conclusion that the defendant completely ignored the administrative machinery available to him.

■ In the first place, the defendant ignored Draft Board communications including several orders to report for a physical examination.

In the second place, defendant's pursuance of his claim to conscientious objector status has been so haphazard as to lead to the conclusion that he intentionally ignored the administrative remedies available to him. The record indicates that the views which he presently has matured at least by December of 1965, but that it was not until March 1966, *after* he had received an order to report for induction, that he filed the conscientious objector form with his Board. He did not inquire about the disposition of his claim until the day before he was scheduled to be inducted on June 21, 1966, although he had received the June 3, 1966, order to report for induction.

In the third place, the gist of defendant's claim to a conscientious objector status is that as a Negro he cannot "conscientiously" serve in the Armed

---

trates the distinction between the term "conscientious objector" as it is used in everyday laymen's language and the same term as it is used in the law, a distinction which cures much current misunderstanding and confusion. Laymen, like defendant, use this term to describe anyone who "conscientiously," i. e., in good conscience, refuses for moral reasons to join the armed services. In contrast, the law uses the same term to characterize a class among those morally opposed to war who have been singled out by Congress for exemption from certain obligations under the Selective Service laws. The former use of the term is far broader and more comprehensive than the latter. In particular, an individual may in perfect sincerity feel that he cannot morally support the

Armed Forces of this country; but this does *not* necessarily mean that he is a "conscientious objector" as a matter of law and as such exempt from certain types of military service. Only certain types of "conscientious objectors," as the layman understands the term—types spelled out in statute and regulation—are "conscientious objectors" in the contemplation of the law.

2. On April 17, 1967, after the indictment in this case issued, defendant was accorded a "courtesy hearing" at which he appeared before the Board on his claim to conscientious objector status. Both parties to this proceeding agree that the courtesy hearing neither cured nor entailed any procedural infirmities. Thus, neither question is considered.

Forces of a nation whose laws and customs do not afford him the same opportunities and protection afforded to white citizens.[3] One need not be unsympathetic with his convictions nor oblivious to the depth and sincerity of his feelings to find that his asserted grounds for conscientious objector status have no basis whatsoever.

Under prevailing legal standard in law, defendant's claim is patently frivolous. This court may not consider the merits of his claim or give the defendant a trial de novo. United States v. Kurki, (E.D. Wis.1966) 255 F.Supp. 161 (1966) (affirmed 384 F.2d 905, July 12, 1967, 7th Cir.). But when an intelligent, educated, articulate, and politically active young man asserts a claim which we believe he knows to be frivolous under the law, we

can only conclude that he is not acting in good faith.

The sum total of the defendant's conduct constitutes a willful disregard for the Selective Service System and its administrative procedures. His conduct cannot be classified as even "neglectful," to say nothing of "excusable neglect."

Lewis claims, and this court accepts as a fact, that since he did not receive the notice of classification as 1–A, which was mailed to him on May 17, 1966, his case should now be remanded to the Selective Service System so that he can appeal this classification. If this fact were standing alone, this court would remand the case. But the record here is clear that Lewis has had ample opportunity to pursue his claim and has failed

3. The defendant submitted the following written statement to the Local Board on April 17, 1967, after he was indicted, which reflects in essence the views that he has had since December 1965:
"Milwaukee Co. Local Bd. 44
Selective Service System
135 West Wells Street
Milwaukee, Wis.
"For me to be a member of the United States Army means that I, a black man, would have to defend and perpetuate the political, social, and economic system of this country. It means that I, a black man, would have to defend and perpetuate the 'American way of life.' This is an atrocious paradox.
"Why should I defend a country that kidnapped my people from their homeland brought them to this country, enslaved and oppressed them, raped them, beat them, and tried to rob them of their basic humanity? Would you if you were black? Why should I, a black man, defend a country that continues to oppress black people, rape black people, beat black people, and tries to make black people belive [sic] that they are inferior? Would you?
"Why should I defend a system that on one hand says that all men are created equal and that all citizens have the same rights, and on the other hand allows a red neck sheriff and his deputies to put you in jail and beat you when you try to exercise these rights? Why should I defend a system that allows the white population of a town to stomp your picket line into the ground while men from the

Justice Department and the F.B.I. stand around and watch and say that all they can do is take notes? Why should I defend a system that teaches black people that everything black is bad and worthless, and everything white is good and virtuous?
"Realizing all along that some of these acts could be interpreted as individual acts by individual people, the mere fact that these individuals are allowed to commit these acts against black people and get away with them means that they have the sanction of the system.
"Would you defend a system that talked about freedom, justice, and equality for all men and then waited two hundred years before it said that people could sit at the same lunch counter or ride anywhere on a bus, and then acted as if full equality had been acheived [sic]? Would you defend a system where people had to be beat, killed, and put in jail before it could be prodded into making even these token gestures?
"What would you do if you lived in a system that had been crushing you, warping you, and lying to you for over three hundred, and then this system said that you had to put yourself in a position to kill another human being, or posibly [sic] be killed yourself, in order for that system to continue to prosper and grow? Because I am a black man in America I very conscientiously object, in fact I absolutely refuse, to defend this very racist society and system of government."

to do so. Based on the record before this court, to remand this case would make a mockery of the whole Selective Service System.

For the foregoing reasons,

It is ordered that the defendant's motion to remand must be and it hereby is denied.