**UNITED STATES of America**
v.
**Walter Joseph CIASTKO.**
**Crim. No. 12251.**

United States District Court
D. Connecticut.
Oct. 10, 1968.

John Cassidento, Asst. U. S. Atty., New Haven, Conn., for the United States.

Peter C. Dorsey, New Haven, Conn., court appointed counsel for defendant.

## DECISION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL *

TIMBERS, Chief Judge.

### I

Defendant's motion for judgment of acquittal at the close of the government's evidence, pursuant to Rule 29 (a), Fed.R.Crim.P., in this prosecution in which defendant is charged in a one count indictment with failure to submit to induction in violation of 50 U.S.C. App. § 462, raises the issue of the validity of the local board's induction order of October 12, 1967 in view of defendant's allegation that the local board did not properly consider his claim as a conscientious objector.

For reasons which I am going to set forth in some detail, after full and careful deliberation, the Court grants defendant's motion for a judgment of acquittal.

"It is well established that the scope of judicial review in Selective Service cases is exceedingly narrow.

'[I]t is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 346 U.S. 389, 396 (1953). The classification can be overturned only if it has "no basis in fact." Estep v. United States, 327 U.S. 114, 122 (1946).' Witmer v. United States, 348 U.S. 375, 380–81 (1955)." United States v. Gearey (II), 379 F.2d 915, 921 (2 Cir.), cert. denied, 389 U.S. 959,

---

* Decision announced orally from the bench.

rehearing denied, 389 U.S. 1010 (1967).

## II

Thus, to decide the instant motion we must apply the law of this Circuit to the facts disclosed by the file and the government's direct case. A brief discussion of what the Court believes are the relevant cases follows:

(1) United States v. Gearey (I), 368 F.2d 144 (2 Cir. 1966), held that whatever defendant's beliefs were on the subject of being a conscientious objector, if these beliefs had matured before the induction notice was sent his conviction for failure to submit to induction could stand. 32 C.F.R. § 1625.2, which prohibits the reopening of a registrant's classification after an induction notice is sent "unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control", was held a reasonable way to avoid the administrative chaos which would result if endless challenges to classifications were permitted. The court stated that claims for deferment must be raised within a reasonable time or are forfeited and recognized that the belatedness of a claim was a factor which the board might consider in assessing its genuineness. Thus, if a conscientious objector claim is raised promptly after it matures, the board must consider it. That the pendency of an induction notice might first crystallize and make articulate conscientious objector claims which had previously been vague, was also noted.

In that case, defendant had been invited by the board for a hearing; at the conclusion of this hearing the genuineness of his conscientious objector claim was rejected. Since the basis of the board's decision was unclear (i. e. whether it had denied the claim as untimely without considering when it had matured), the court remanded to "enable the judge to ascertain from the Local Board precisely what it meant." 368 F.2d at 151, citing United States v. Ja-

kobson, 325 F.2d 409, 417 (2 Cir. 1963) (government could prove insincerity from mouths of members of Appeal Board), and United States v. Balogh, 157 F.2d 939, 944 (2 Cir. 1946), judgment vacated on other grounds, 329 U.S. 692 (1947) (wherein Judge Learned Hand recommended testimony be taken from the mouths of board members to clarify the issue of improper influence).

(2) Gearey (II), supra, held that the evidence supported the board's conclusion that defendant had not been a conscientious objector. Having considered his claim on the merits and rejected it, the board was not required to determine when it had matured since determination on the merits made this issue irrelevant. On the remand from Gearey (I), the trial court had held a hearing in which the chairman, secretary and another member of the board were questioned; their answers convinced the court that the late raising of the conscientious objector claim after the induction notice had been received did not result in conscientious objector status denial.

(3) United States v. Stafford, 389 F.2d 215 (2 Cir. 1968), held that on remand the trial court should ascertain whether the board had determined the question of maturity on a rational basis. Judge Moore noted that a registrant was not to be treated as engaged in formal litigation with the assistance of counsel. Although the board's minutes had stated it had been unable to reopen his classification because there had been no change in status from circumstances beyond his control, an ambiguity was held to have been created by the board's reference to his delay in filing the claim. This ambiguity was the cause of the remand.

(4) Finally, in United States v. Davis, 279 F.Supp. 920 (D.Conn.1967), aff'd per curiam, 390 F.2d 879 (2 Cir. 1968), Judge Zampano had held that defendant's failure to pursue administrative remedies precluded him from attacking the correctness of the board's action. The Court heard testimony of the secretary of the board and an officer from

state headquarters. In addition, the Court noted that "[t]he record further reveals that the board discussed and considered the matter to an extent which provides the necessary 'basis in fact' to sustain its decision." 279 F.Supp. at 922. Compliance with a letter from state headquarters recommending a hearing on such conscientious objector claims was held not to be a prerequisite to lawful action by the board. On the facts of that case it was not a denial of due process to classify registrant on the basis of information in the file.

## III

Now applying the principles of these authorities, to which I have just referred, to the facts before the Court in the instant case on the present state of the record, the government's evidence in the case on trial consists of the defendant's draft board file and the testimony of two witnesses. Since the testimony did not go beyond the contents of the file on the relevant issue of whether there is a "basis in fact" for the board's denial of defendant's conscientious objector status, the file alone is sufficient here to be considered. And that file discloses the following relevant information:

(1) *SSS Form No. 100 (in December of 1965)*. On this general questionnaire defendant originally inserted a claim in Series VII ("Minister") which indicated he had been a minister of the Jehovah's Witnesses since 1947 but he crossed this out and replaced it with "Does not apply." Series VIII ("Conscientious Objector") was left blank. On page eight appear entries by the board which indicate classification to I–A under date of May 13, 1967, mailing of the induction order on July 13, 1967, and then the following two significant entries quoted in full:

(a) Under date of September 12, 1967, "Registrant's File, including Form 150 and answers to questionaire

(sic), reviewed and reclassification deemed unwarranted.

(s) E. W. Cohen 4–0 (vote)"

(b) The second entry is under date of March 5, 1968, "Entire contents of Registrant's file were reviewed for the limited purpose of refreshing the Board's recollection so that it could record its reason for its conclusion on Sept. 12, 1967 that the registrant's reclassification was unwarranted. The Board finds that it was unable to reopen this Registrant's classification for the reason that the Registrant's conscientious objector claim had matured before S.S.S. Form 252 (Induction Order) was forwarded to him on July 13, 1967. Accordingly, the Board was unable to re-open the classification under the provisions of S.S. Regulation section 1625.2 because there has been no change in the Registrant's status as the result of circumstances over which he had no control.

(s) E. W. Cohen 6–0 (vote)"

This March 5 entry, though seemingly an afterthought, does serve the purpose of avoiding the pitfalls of the cases discussed above wherein the Court of Appeals was unable to determine the grounds on which the respective boards had acted. Whereas in those cases a remand was necessary to obtain the testimony of board members, here by an entry six months later the basis of the board's action has been clarified. Assuming good faith by the board, we need now only inquire as to whether the information before the board provided a "basis in fact" for its conclusion that defendant's claim had matured prior to his receipt of the induction order. This information included:

(2) *SSS Form No. 150—Special Form for Conscientious Objectors (filled out in August 1967)*.[1]

Defendant, after describing his belief, explained that his parents were Jehovah's Witnesses and that he had been

---

1. The Court is quoting those portions of the file which relate to the issue of maturity. Since the board did not consider the sincerity of his beliefs, defendant's statements concerning this issue have not been considered.

trained as such in his youth, but noted that "at the age of 14 my parents separated and still are at present time. For a time my association with the Jehovah's Witnesses had been discontinued, but recently of my own free will (the answer appears to be continued on an unlined sheet marked Question 4) I have begun to attend meetings and will re-enroll in the Ministry School . . . ."

(3) The next document in this file that is relevant as providing the information indicated is *Defendant's Request for Conscientious Objector Status* (it was his letter, I believe, of July 24, 1967), in which he stated, "I am now associated with the Jehovah's Witnesses and have been associated with them since a child . . . .

"Because of parental difficulties (my father and mother now being separated) my ties with the Jehovah's Witnesses had been broken for a few years. I have only recently been associating again,

. . .

"My reason for not applying for a conscientious objector deferment before, is because I had been told that since I was associated with Jehovah's Witnesses I would not be able to obtain a deferment as a conscientious objector. I have now found out that I am able to obtain a conscientious objector deferment and I am now asking you to change my status from I–A to conscientious objector. I would be happy to appear for a hearing so that I may discuss this with you in person."

(4) And then defendant's answers to certain questions put to him in August of 1967, as testified by one of the witnesses yesterday, including this answer:[2]

"For a good part of my life, except when my mother and father were having marriage problems and were both disfellowshiped (sic) from the organization. For about 5 or 6 years I was unable to associate. Then about 6 months ago I started associating again."

## IV

■ This leads to the question: Was there, within the language of the authorities I have cited, a "basis in fact" for the board's finding that defendant's conscientious objector claim had matured prior to receipt of the induction notice? While reasonable men often differ about close questions such as this, it is clear to this Court that the board based its finding on maturity on the facts that defendant was a Jehovah's Witness during his pre-teen years and his return to the faith during 1967. How such facts in isolation support a finding that his claim as a conscientious objector matured prior to his receipt of the induction notice does not readily appear. Certainly the religious beliefs of a pre-teen boy should not be said to constitute the maturing of conscientious objector beliefs in the sense of § 1625.2, especially in light of defendant's abandonment of Jehovah's Witnesses until six months before the hearing. As to his recent return to these beliefs, this should be considered in the context in which defendant asserted his return. He undoubtedly assumed that claiming his beliefs had first matured after receipt of the induction order might appear to be a rationalization lacking in sincerity; therefore, this is at best an ambiguous statement on which to base so important a decision.

The failure to hold a hearing to determine the issue of maturity, while held not to be a denial of due process in *Davis,* supra, is more questionable here in light of the paucity of the record before the board. Moreover, in *Gearey* (I) a hearing was held; and in *Gearey* (II) and *Davis* testimony of board members was given. Here the thought processes of the board can only be inferred, absent such testimony or minutes of the proceedings. The defect assumed might have been cured if the government had

---

2. Although the questions themselves do not appear in the file, these handwritten pages would seem to have been submitted in response to standard board questions to conscientious objectors.

introduced such proof, but reliance on the conclusory statements of the board in March 1968, the so-called *post mortem* entry, and the papers before it, seem to the Court to fall short of the "basis in fact" test.[3]

Accordingly, defendant's motion for a judgment of acquittal, pursuant to Rule 29(a), Fed.R.Crim.P., is granted.

3. *Modification of Oral Memorandum of Decision*

In the light of the ultimate disposition of this case by granting defendant's motion for a judgment of acquittal for the reason that there was no "basis in fact" for the board's holding that defendant's claim had matured prior to receipt of his induction order, the Court's suggestion that the government had inadequately presented its case by failing to call board members to testify was directed solely toward the ambiguity of the March 5 entry. Testimony of board members might have been offered to specify the reasons for the six month delay in its clarification of the Sept. 12, 1967 action, as well as to establish that the board in March (when six members voted) was composed of the same men as in September (when four members voted). However, the Court, in assuming the good faith of the board and by virtue of its granting of the motion for acquittal, made such testimony unnecessary. There should not be read into the Court's opinion any view that the government should have called board members to testify on issues relating to the factual foundation of their decision. Courts have utilized board testimony only to aid in the clarification of the board's decision; once this is established, it is for the Court to review the file and determine whether there was a "basis in fact" for a decision on such grounds.