**UNITED STATES of America,
Plaintiff,**

**v.**

**John W. HAWLEY, Defendant.**

**No. 4–69 Crim. 8.**

United States District Court,
D. Minnesota,
Fourth Division.

May 26, 1969.

Patrick J. Foley, U. S. Atty., by Neal Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for the United States of America.

Chester A. Bruvold, Minneapolis, Minn., for defendant.

## ORDER OF DISMISSAL

MILES W. LORD, District Judge.

Defendant John Hawley has moved the Court to dismiss the indictment in this prosecution. Defendant is charged with failure to comply with an order of his local draft board to report for and submit to induction into the armed forces of the United States in violation of 50 U.S.C.App. Section 462.

After careful examination and review of defendant's selective service file, the Court concludes that defendant's motion to dismiss should be granted. Specifically, the Court finds no basis in fact for the I–A classification given defendant, pursuant to which defendant was ordered to report for induction on November 6, 1968.

## FACTUAL CHRONOLOGY

The following information is contained in defendant's selective service file:

Defendant, who was born July 17, 1945, completed his Selective Service Classification Questionnaire August 12, 1963. On this Questionnaire, he stated that he was enrolled in college and preparing for a career in college teaching. Defendant did not claim exemption as a conscientious objector and he received a II–S student deferment from the Board. In March 6, 1966 defendant returned a current information questionnaire disclosing that he was now preparing for a legal career and planned to enter law school. Defendant enrolled at the University of Minnesota law school in the fall of 1967.

The II–S classification was continued throughout defendant's undergraduate schooling (except for a brief period when he left school). Defendant requested that he be allowed to complete his freshman year in law school, and pursuant to this request the Board, acting on November 14, 1967, extended his II–S classification through the end of the academic year. The following letter dated November 15, 1967 was then received by the Clerk of the Local Board:

Dear Miss Bell,

I am presently confronted with quite a bit of conflicting information concerning my draft status and my educational future. I have several questions which I would like you to answer to your best knowledge.

When my 2–S expires in June, what are the chances of my being drafted, and when?

If I am not drafted this summer, and I begin classes next fall, will I be allowed to finish the year? the term?

If I am drafted this summer, what sort of schedule ought I to expect; that is, when will I be reclassified, receive my notice to report for a physical, etc?

If I send you a letter during the year volunteering for the draft when my 2–S expires, will I be able to withdraw myself from the list of volunteers subsequently if conditions change?

I am very uncertain about the options I have under the new draft law, and therefore I am very uncertain about my future plans. I would appreciate very much the answer to these questions and any other information you feel might affect my plans.

Sincerely,
John W. Hawley
13–98–45–203

By letter dated November 20, 1967, the Board replied:

Dear Sir:

In reply to your letter of 15 November 1967. The local board is not able to give you a date of when you will be ordered for Induction. If you were to reenter school in the fall a 2–S classification could not be granted. You will probably be ordered to take your Armed Forces Physical Examination sometime between February and May 1968, and be reclassified in May 1968.

Anytime a registrant volunteers for induction his named [sic] goes to the top of the available list and is ordered first. Once a volunteer registrant is ordered for induction he cannot withdraw his application.

BY DIRECTION OF THE
LOCAL BOARD
NORMA J. BELL, Clerk.

On February 14, 1968 the Board received defendant's request for SSS Form No. 150, which must be completed by one seeking classification as a conscientious objector. The Form was mailed to defendant on the following day and returned to the Board February 27, 1968.

In the interest of brevity, defendant's answers to the questions set forth in SSS 150 are summarized in this opinion. Defendant stated that he believed in a Supreme Being and was a member of the Methodist Church. In describing the nature of the belief which is the basis of his claim he quoted several passages

from the Bible and eventually concluded, "I am a Christian, gentlemen, and I cannot serve in the military. The military is by its nature the very antithesis of Christianity—the two cannot be reconciled." In explaining the "source" of his belief, he acknowledged that various philosophy courses in college seemed to develop a religious awareness within him The tenets which he confronted in philosophy and ethics "parallelled" the Christian beliefs to which he had been exposed since childhood. He found that Christianity became "relevant to him during this period for the first time in his life."

The Social Creed of the Methodist Church was appended to SSS 150. In essence, the Creed acknowledges that a Methodist may or may not conscientiously oppose participation in war, and to the extent that one is in opposition, he will receive the support of the Methodist Church.

Finally, defendant described his participation in the War Resisters League and group discussions as actions and behavior demonstrating the consistency and depth of his religious convictions. He cited an address delivered to his congregation (Fridley Methodist Church) on the subject of conscientious objection to war as an instance of public expression of the views which he expressed.

Numerous letters were received by the Board on or about the time the SSS 150 was returned, attesting to the sincerity and strength of defendant's opposition to participation in war. Among those writing were defendant's older brother (a minister in the Methodist Church), his father (who served in the Air Force in World War II), his pastor, several college instructors and friends.

Defendant was ordered to report for his physical examination on March 4, 1968. He was found acceptable for induction into the armed forces. On May 8, 1968 the Board voted to classify defendant I–A. Defendant had requested a personal appearance before the Board, but this appears to have been denied. The "Classification Memorandum" recording the votes of the three Board members included the following "Remarks":

> End of 1st yr grad school-Form 150–CO on file. Not granted based on the fact the board feels this is not his religious ting [sic] but is formed out of a personal moral view [signed] N. J. Bell

Subsequent to this action, the Board advised defendant that he had a right to receive a personal appearance or to appeal within thirty days. He did appear before two members of the Board on June 19, 1968 and was given a second appearance before the Board on July 16, 1968 because of the absence of the third voting member on June 19. Following the second appearance, the Board voted two-to-one to continue the I–A classification. Again, the Classification Memorandum contained "Remarks":

> Mr. Olsen & Vets voted against 1–O believing this to be a personal moral view & not on religious ting [sic].
> Mr. Murphy voted for giving 1–O. [signed] N. J. Bell

Defendant prepared written summaries of the questions propounded, together with his answers, at each appearance. Essentially, defendant's answers reiterate and amplify the views which he expressed in completing SSS 150.

The July 16 vote was the final act of the Local Board, though in a letter dated August 15, 1968 defendant asked the Board to reconsider the action taken. This letter was accompanied by a statement attesting to his sincerity in conscientious opposition to participation in war which was signed by twenty-six members of the Fridley Methodist Congregation.

The Appeal Board affirmed the Local Board classification on September 28, 1968. A memorandum addressed to the Local Board discloses that the vote for affirmance was unanimous; no remarks or other reasons explaining the Appeal Board's decision appear in the Selective Service file. Defendant was ordered to

report for induction on November 6, 1968. He was advised by the Iowa State Director of the Selective Service System by letter of November 1, 1968, that he had been granted all of his procedural rights. On November 6, 1968 he was found qualified for induction but refused to submit to induction. The Government's indictment was filed January 31, 1969.

### SCOPE OF REVIEW

█ The scope of review by the District Court is narrow in the selective service cases. 50 U.S.C.App. Section 460(b) (3) states that "such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

█ Generally, the Court would have to determine whether or not the selective service file disclosed any basis in fact in support of *any* reason which would, under the statute (50 U.S.C.App. Section 456(j)) warrant denial of a conscientious objector classification. The threshold question would be whether or not the asserted belief is "truly held" or sincere. See United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965); Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

Defendant's file discloses that his claim for classification as a conscientious objector was made only after he had been deferred for several years as a student, and after he had received a letter from the clerk of the Local Board in late 1967 to the effect that he would, in all likelihood, be drafted. Defendant's letter to which the clerk had re-

sponded, could itself be viewed by a draft board as containing statements inconsistent with a subsequent position in opposition to participation in war in any form. Thus, absent any indication of the Board's reasons for denying defendant's request, this Court would be compelled to affirm the I–A classification for the reason that defendant may have been found insincere. See, e. g., Witmer v. United States, supra; Salamy v. United States, 379 F.2d 838 (10th Cir. 1967); United States v. Jakobson, 325 F.2d 409, 412 (2d Cir. 1963), aff'd, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

█ In the present case, however, it is not necessary for this Court to consider every possible reason which might justify a denial of the defendant's conscientious objector claim. The Local Board at each instance in which it voted to deny the I–O recorded an opinion by the majority that defendant's beliefs in opposition to war did not result from religious training and belief, but from a personal moral code or view. The only plausible inference which this Court can make is that the Board accepted defendant's sincerity, but found the source of his belief insufficient under the statute.[1] It would do great injustice to defendant for this Court to now determine that he was not classified as a conscientious objector because he was insincere, when it is more likely than not that his sincerity was accepted by the Board.

There is ample legal precedent for this Court to confine its review to a determination of whether there is a basis in fact to support the reason advanced by the Local Board. In Gatchell v. United States, 378 F.2d 287 (9th Cir. 1967), the court rejected the government's contention that the District Court should examine the entire file to deter-

---

1. The fact that defendant first advanced his claim after receiving successive student deferments certainly does not preclude a Board from accepting his sincerity. See United States v. Pence, 410 F.2d 557 (8th Cir., May 1, 1969). In this case, the Board may well have concluded that "moral and religious values are subject to change, particularly as a young man reaches and enters maturity." Davis v. United States, 410 F.2d 89 (8th Cir., April 30, 1969).

mine whether a basis in fact existed for the classification:

Although the appeal board memorandum * * * states that these two reasons are given "among others," we will not search the record to find other reasons when the appeal board has given specific reasons which are legally insufficient to support the appeal board's classification. Id. at 292–293.

The only reason advanced by the government here to search for all possible reasons in support of a denial of defendant's claim is that the Appeal Board affirmed without comment. It is argued that since the Appeal Board must examine the entire file of each registrant (32 C.F.R. 1626.24) and considers each case de novo, the District Court should disregard the reasons expressed by the Local Board.

■ This argument does not find support in the cases. Under former law, each conscientious objector claim was sent to the Department of Justice where the registrant would be afforded a hearing. Following the hearing, and an independent examination of the registrant's file, the Department would forward its recommendation and reasons to the Appeal Board. The Appeal Board made the final decision in each case, and was not bound by the Department's recommendation. In spite of the Appeal Board's final authority, the Supreme Court in Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) reversed a conviction when one of two reasons assigned by the Department for denial of a conscientious objector claim was erroneous:

[T]his error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings at least where it is not clear that the Board relied on some legitimate ground. Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds. 348 U.S. at 392, 75 S.Ct. at 406.

The same decision was reached in United States v. Jakobson, 325 F.2d 409 (2d Cir. 1963), aff'd, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) when the Department gave two reasons for denial of a conscientious objector's claim, one being lack of sincerity, but the Appeal Board did not indicate on which ground it relied upon:

If we were certain that the denial of exemption rested on a finding of insincerity, Jakobson's five year delay in claiming conscientious objection and his shift of position after making the claim would oblige us to affirm his conviction. 325 F.2d at 412.

See Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954).

The rationale in *Sicurella* has been extended by the courts to the situation where the *Local Board* assigns an erroneous reason and the Appeal Board affirms without comment. See United States v. Carroll, 398 F.2d 651 (3d Cir. 1968); United States v. Stepler, 258 F.2d 310 (3d Cir. 1958); Owens v. United States, 396 F.2d 540 (10th Cir.), cert denied, 393 U.S. 934, 89 S.Ct. 294, 21 L.Ed.2d 270 (1968); United States v. Ciastko, 295 F.Supp. 996 (D.Conn. 1968); see also United States v. Wymer, 284 F.Supp. 100 (S.D.Iowa 1968); cf. United States v. Tichenor, 403 F.2d 986 (6th Cir. 1968); United States v. Chodorski, 240 F.2d 590 (7th Cir.), cert denied, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957). The Tenth Circuit held in Owens v. United States, supra:

If the Board [local] states reasons for its action, however, and these reasons are found to be legally insufficient to support the Board's classification, the classification should be found to be without a basis in fact. This is true even if an independent search of the record discloses an adequate basis in fact to support the action of the Board, for there would be the risk that

the impropriety of the stated reasons tainted the Board's decision. 396 F.2d at 542–543.

It is to be noted that the government selective service manual, Hershey, Legal Aspects of Selective Service (1969), acknowledges that "where a board assigns an erroneous reason for denying a claim which on its face would justify a basis for exemption, such an unfounded finding constitutes a fatal defect in a criminal prosecution." Id. at 29.

## REJECTION OF DEFENDANT'S CLAIM UNDER THE PERSONAL MORAL CODE EXCLUSION

The question to be decided is whether there is a basis in fact to support the Board's conclusion that defendant's belief in opposition to participation in war resulted from a personal moral code instead of religious training and belief. The statute, 50 U.S.C.App. Section 456 (j) excludes from either combatant or noncombatant service in the armed forces a person found "conscientiously opposed to participation in war in any form" and "to participation in * * * noncombatant service" "by reason of religious training and belief." The statute specifies that "the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

The Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) broadened the ambit of the protection to be extended to one conscientiously opposed to participation in war. Of relevance to defendant Hawley is the Court's holding that it is "unnecessary to belong to a pacifist religious sect if the claimant's own opposition to war was based on 'religious training and belief.'" 380 U.S. at 171, 85 S. Ct. at 857. In addition, "minority members of a faith not opposed to war might through religious reading reach a conviction against participation in war." Id. at 172, 85 S.Ct. at 857.

The Court recognized that the statute "further excluded those whose opposition to war stems from a 'merely personal moral code' * * *'" Id. at 173, 85 S.Ct. at 858. However, "the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." Id. at 184, 85 S.Ct. at 863. Perhaps the most significant statement is the following:

We have construed the statutory definition broadly and it follows that any exception to it must be interpreted narrowly. The use by Congress of the words "merely personal" seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being. [Emphasis added.] Id. at 186, 85 S.Ct. at 864.

The Supreme Court noted that at no time had the registrant suggested that his objection to war was based on a personal moral belief in affirming the dismissal of his indictment. To be distinguished is a recent decision of the Eighth Circuit affirming a conviction which followed a denial of a claim of conscientious objection. Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968) Specifically, the Eighth Circuit held that the views contained in a letter sent by the registrant to his Local Board did not present a prima facie showing of conscientious objection to war by reason of religious training and belief, and that the Board was not compelled to reopen registrant's case. The Court noted that the registrant at one time told the Board that he could not be considered a conscientious objector under existing law, and that he did not vow allegiance to Christian principles, but said only that "[i]ncidentally my principles seems to be the same as Christian principles." 404 F.2d at 592. The Court concluded:

The communication convincingly demonstrates that appellant's claim was premised solely on a moral and philosophical code. He declared in unequivocal language: (1) Participation in the Armed Forces is unethical; (2) War is outmoded; (3) Killing is immoral; (4) Passive resistance is much more effective; (5) Moral force

is much stronger than physical force. *Id.*[2]

In Fleming v. United States, 344 F.2d 912 (10th Cir. 1965) the registrant was a Methodist who changed his church preference to Unitarian in College and joined a pacifist organization. He said that his conscientious beliefs in opposition to participation to war were acquired in part from his father, a Methodist minister. Although no request for a conscientious objector classification was made until the registrant was reclassified (apparently from a II–S) to a I–A, the Court dismissed the indictment finding no basis in fact for the I–A:

> As we read the Seeger case, it clearly lays down the rule that before a conscientious objector classification may be denied on the ground that the applicant's beliefs are based upon "political, sociological, or philosophical views or a merely personal moral code", those factors must be the sole basis of his claim for the classification. * * *

The entire record clearly shows that his beliefs are, in part at least, based upon religious convictions. It may be true that appellant has been influenced * * * "more by sociological and philosophical views than by religious beliefs or the dictates of a deity." But, it is also clear that he had been influenced by religious training and belief. 344 F.2d at 915–916.

Other recent decisions appear to strictly adhere to the guidelines set down in Seeger.[3]

 In summary, it is not necessary that a religious denomination proscribe participation in war for an individual member to be found entitled to a conscientious objector's classification. See generally Hershey, Legal Aspects of Selective Service 15–16 (1969). It is only necessary that the registrant himself oppose participation in war by reason of the beliefs he has acquired through his religion. Finally, the individual may oppose participation in war for both religious and moral or philosophical reasons; it is only when the individual's belief is based *solely* on moral or ethical views that he can be denied a I–O because of the "merely personal moral code" exception of Section 456(j).

### Application of the foregoing to the facts in the present case.

The record which was before the Local Board establishes that Hawley was born

---

2. But see the dissenting opinion of Judge Bright, who found that the above assertions by the registrant entitled him to a reopening of his case. 404 F.2d at 596. Compare Davis v. United States, supra.

3. Among the cases finding no basis in fact for denial of the I–O classification are Kessler v. United States, 406 F.2d 151 (5th Cir. 1969) [Registrant was a member of the Church of Christ. The Church Creed teaches against participation in war, but each member is free to make his own choice. Several members of registrant's family had served in the armed forces.] United States v. Purvis, 403 F.2d 555 (2d Cir. 1968) [Registrant was a member of the Quakers.]; United States v. Carroll, 398 F.2d 651 (3d Cir. 1968) [Registrant was a Jehovah's Witness.]; United States v. Carson, 282 F. Supp. 261 (E.D.Ark.1968) [Registrant belonged to the First Pentecostal Church of Jesus Christ].

Cases affirming the I–A classification include: Welsh v. United States, 404 F.2d 1078 (9th Cir. 1969) [Registrant "constantly declared that his beliefs stemmed from sociological, economic, historical and philosophical consideration. He denied that his objection to war was premised on religious beliefs. The Appeal Board was entitled to take him at his word * * *." 404 F.2d at 1081–1082.]; Clay v. United States, 397 F.2d 901 (5th Cir. 1968), judgment vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (Mar. 24, 1969) [Registrant a member of the Black Muslim religion, which teaches against participation in war "on grounds which are primarily political and racial." 397 F.2d at 919.]; United States v. Lewis, 275 F.Supp. 1013 (E.D.Wis.1967) [Registrant said he could not join the Armed Forces because he was "black and American."]; United States v. Haughton, 290 F.Supp. 422 (W.D.Wash.1968) [Registrant believed in "love" and "pacifism."]

and raised a member of the Methodist Church. His older brother is now a minister of that denomination. Hawley attended the Fridley Methodist Church, and twenty-six members of that congregation saw fit to sign a statement attesting to the sincerity of his religious beliefs.

Although the Creed of the Methodist Church acknowledges that each member must decide for himself whether or not to oppose participation in war (Hawley's father served in the Air Force), Hawley contends that his Christian views do not allow him to so participate. His answer to Question 2 of SSS Form No. 150 [4] quotes several passages of Scripture, and states near the end, "I am a Christian, gentlemen, and I cannot serve in the military. The military is by its very nature the very antithesis of Christianity—the two cannot be reconciled." Hawley indicated that he read his answer to Question 2 before the Fridley congregation.

■ There is nothing in the record to indicate that Hawley's professed objection to participation in war stems solely from a personal moral code. His answer to Question 3 of SSS Form No. 150 [5] states only that "[m]y religious awareness began to develop parallel to but subsequent to a growing social awareness which I was feeling which grew from various courses I took in the social sciences." He indicates that exposure to several ethics courses, including one taught by an avowed atheist, "parallelled my minister's theory of the obligations of a Christian" and "suddenly made Christianity relevant to me for the first time in my life." These answers can be construed to mean that Hawley was influenced in part by moral or ethical views; they certainly are not amenable to a conclusion that Hawley was influenced solely or predominantly by a personal moral code.

It is concluded here that there is no basis in fact discernible from the entire record before this Court to support the reason advanced by the Board in refusing to grant the conscientious objector classification to the defendant, and

### ORDER

It is ordered that defendant's motion to dismiss the indictment be granted without prejudice to such new proceedings for the defendant's induction as the Selective Service might find wise to undertake.

---

4. Question 2 reads: "Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation."

5. Question 3 reads: "Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above."